[No. 2107]

## ORMSBY COUNTY AND THE COUNTY COMMIS-SIONERS OF ORMSBY COUNTY, RELATORS, *v.* WILLIAM M. KEARNEY, AS STATE ENGINEER, RESPONDENT.

[No. 2115]

## JOHANNES ANDERSON, ET AL., RESPONDENTS, *v.* WILLIAM M. KEARNEY, APPELLANT.

[142 Pac. 803]

OPINION OF NORCROSS, J.

1. WATERS AND WATERCOURSES—STATE REGULATION—POLICE POWER.

The state, within its police power, may regulate the distribution of the waters of the state. The state is not only interested in protecting prior appropriators in their rights, but is also interested in the conservation of the waters to the end that the greatest possible amount of land may be brought under cultivation through an economical diversion and use of such waters. To accomplish this object the state has a right to exercise a superintending control.

2. WATERS AND WATERCOURSES—STATE REGULATION—POLICE POWER —CONSTITUTIONAL LAW.

Assuming the establishment of the relative rights of water users on a stream system, no constitutional right is infringed by a system of state control such as is provided in sections 52 to 56 of the water law of 1913 (Stats. 1913, c. 140).

3. WATERS AND WATERCOURSES—STATE REGULATION—POLICE POWER —CONSTITUTIONAL LAW.

The constitutionality of sections 18 to 51 of the act of 1913, providing a method of determining the relative rights of water users upon a stream system by the state engineer, should be viewed with reference to the purpose designed to be accomplished by sections 52 to 56 of said act, which latter sections are clearly administrative in character.

4. WATERS AND WATERCOURSES—STATE REGULATION—POLICE POWER —CONSTITUTIONAL LAW—DUE PROCESS OF LAW.

The provisions of sections 18 to 51, inclusive, do not contemplate the deprivation of property without due process of law; they contemplate the securing to water users their rights, not the taking of the same away. For purposes of administration the enjoyment of such rights may be affected, but only after notice and hearing, and the right to adjudication by the courts is not taken away.

5. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—COURTS.

Due process of law is not limited to judicial proceedings, but also comprehends determinations by administrative officers or boards where notice and a hearing are provided.

6. CONSTITUTIONAL  LAW — JUDICIAL  FUNCTIONS — WATER  LAW  OF
   1913.
      The provisions generally of sections 18 to 51, inclusive, of
   the water law of 1913, considered for purposes of administra-
   tion, are not violative of article 3 of the state constitution,
   dividing the state government into three coordinate depart-
   ments.

7. CONSTITUTIONAL  LAW — JURISDICTION  OF  COURTS — WATER  LAW  OF
   1913.
      The provisions of sections 18 to 51, inclusive, are not viola-
   tive of section 6 of article 6 of the constitution, fixing the
   appellate and original jurisdiction of district courts, in that the
   determinations made by the state engineer of the relative
   rights of water users are not made in "cases in equity" or
   "cases at law," as those terms are used in said section.

8. CONSTITUTIONAL  LAW — WATER  LAW  OF  1913.
      In so far as the water law of 1913 authorizes the state
   engineer to investigate and determine the relative rights of
   water appropriators or users upon any stream or stream system,
   or requires statements to be made by the several claimants of
   their respective claims and requires such claimants to support
   the same with proofs, and authorizes the state engineer to
   determine contests, or authorizes the control of the distribu-
   tion of the waters of a stream to the persons found to be
   entitled thereto, the law is valid.

9. CONSTITUTIONAL  LAW — QUESTIONS  UNNECESSARY  TO  DETERMINE.
      Questions presented in certain of the provisions of sections
   18 to 51, inclusive, such as whether the determinations made
   by the state engineer have any force other than as being con-
   trolling for purposes of the administration of the law, until
   modified, suspended, or set aside by some order or decree of the
   court, or whether the methods prescribed for appeal from the
   decisions of the state engineer in cases of contest are valid,
   are unnecessary to be determined in this case, and will not be
   considered under the rule that constitutional questions not
   essential to a determination of the case will not usually be
   determined.

10. WATERS  AND  WATERCOURSES — WATER  LAW  OF  1913.
      The provisions of section 84 of the water law of 1913 provid-
   ing: "Nothing in this act contained shall impair the vested
   right of any person,  *  *  *  nor shall the right of any person
   *  *  *  be impaired or affected by any of the provisions of
   this act where appropriations have been initiated in accordance
   with law prior to the approval of this act," does not limit the
   power of the state engineer to determine for administrative
   purposes relative rights of water appropriators or users vested
   prior to the passage of the act, and to administer such prior
   acquired rights in accordance with such determinations subject
   to remedy by the courts for errors in determinations.

11. WATERS AND WATERCOURSES—STATE REGULATION—VESTED RIGHTS, WHAT IS UNLAWFUL INTERFERENCE WITH.

It is not an unlawful interference with the vested rights of water appropriators to so control those rights that each may have what belongs to him, but that he may not voluntarily interfere with the rights of others.

OPINION OF TALBOT, C. J.

1. STATUTES—PARTIAL INVALIDITY.

Where a part of a section of a statute is unconstitutional, such invalidity will not necessarily prevent the enforcement of the remainder.

2. WATERS AND WATERCOURSES—STATE WATER SUPPLY—REGULATION —CONTROL—POLICE POWER.

The state, in the exercise of its police power to prescribe laws for the general welfare, may provide for inspection, regulation, and exercise a superintending control over the waters and watercourses of the state, and Stats. 1913, c. 140, known as the water act, and giving the state engineer the right to institute proceedings to determine the rights of the owners and persons controlling water rights in the state, if construed as administrative only and not to impair vested rights, is valid.

3. CONSTITUTIONAL LAW—GOVERNMENTAL AUTHORITY—DIVISION— ENCROACHMENT ON JUDICIARY.

Stats. 1913, c. 140, providing for the establishment of water rights in proceedings before the state engineer, and authorizing such administrative officer to make decrees which, in the absence of appeal, are declared final, in so far as it attempts to make such decrees conclusive on the parties, is unconstitutional as impairing the constitutional power of the judiciary, under Const. art. 6, sec. 1, declaring that the judicial power of the state shall be vested in certain specified courts.

OPINION OF McCARRAN, J. (DISSENTING GENERALLY)

1. CONSTITUTIONAL LAW—WATER LAW OF 1913—POWERS OF STATE ENGINEER.

Sections 18 to 51, inclusive, of the water law of 1913 are unconstitutional and void in that they attempt to invest the state engineer with powers to affect or destroy the property rights of water appropriators or users in violation of the due process of law provisions of the federal and state constitutions, and because they attempt to invest the state engineer with judicial powers reposed in the courts, in violation of article 3, section 1, and article 6, sections 1 and 6, of the state constitution.

2. WATERS AND WATERCOURSES — WATER LAW OF 1913 — STATUTES ADOPTED FROM OTHER STATES, RULE OF CONSTRUCTION.

Courts of a state which have adopted a statute from another state, after it has been construed by the courts of that state, are not bound by such construction, where the organic law of the two states differ in essential particulars affecting the law

in question, or where the laws are not identical, or where the circumstances of the people of the adopting state are essentially different. *Held, also,* that the Nevada water law of 1913 differs in essential particulars from the water laws of Wyoming and Nebraska, and that the constitutions of those states also differ in material particulars. hence, this court is not bound by the decisions of the highest courts of those states construing the provisions of their water laws.

3. WATERS AND WATERCOURSES—WATER LAW OF 1913—RETROACTION.
    It was the purpose of the legislature, particularly emphasized by section 84 of the water law of 1913, to recognize appropriations made under former laws or legislative acts and to keep those appropriations free from being affected ·or impaired by anything contained in the water law of 1913.

No. 2107.   ORIGINAL PROCEEDING in prohibition by Ormsby County to prohibit the State Engineer from proeeeding under the water law of 1913 (Stats. 1913, c. 140) to determine the relative rights of the appropriators and users of waters of Clear Creek.   **Writ dismissed.**

No. 2115.   APPEAL from the Sixth Judicial District Court, Humboldt County; *Edwin A. Ducker,* Judge.

Suit by Johannes Anderson and others against W. M. Kearney, as State Engineer, to restrain him from taking proceedings under the water law of 1913 (Stats. 1913, c. 140), to determine the right of complainants and others to appropriations of the water of the Humboldt River and its tributaries.   From an order denying the motion to set aside a temporary injunction, the State Engineer appeals.   **Order modified.**

## STATEMENT OF FACTS

Cases No. 2107 and 2115 involve substantially the same questions and were heard together.   Case 2107 was a proceeding in prohibition against the state engineer to prohibit that officer from proceeding to determine the relative priorities of water users or appropriators upon Clear Creek; the county of Ormsby being one of such users or appropriators. ˙ Case 2115 was an action instituted by Johannes Anderson and fifty other claimants or appropriators of the waters of the Humboldt River for themselves and for all other claimants or appropriators

of the waters of said river to obtain a decree establishing: "That defendant, state engineer, has no right or authority to hear or determine any matter or thing relating to or concerning the relative right of plaintiffs, or either of them, or any other claimant to or appropriation of the water of said Humboldt River and its tributaries, which said rights to or appropriations of said waters have been made and completed prior to the approval of said act, approved March 22, 1913.    *    *    *    That sections 18 to 58, both inclusive, of said act, approved March 22, 1913, are, and each of said sections is, and each and every part of each of said sections is, unconstitutional, invalid, null, and void."

In case No. 2115 a temporary injunction was also prayed for and granted. From an order denying a motion to set aside such temporary injunction, the state engineer appeals.

These cases involve the constitutionality of certain provisions of what is known as the state water law of 1913 (Stats. 1913, p. 192). The act in question is entitled: "An act to provide a water law for the State of Nevada; providing a system of state control; creating the office of the state engineer and other offices connected with the appropriation, distribution and use of water; prescribing the duties and powers of the state engineer and other officers and fixing their compensation; prescribing the duties of water users and providing penalties for failure to perform such duties; providing for the appointment of water commissioners, defining their duties and fixing their compensations;    *    *    *    and other matters properly connected therewith, and to repeal all acts    *    *    *    in conflict with this act," etc.

A brief synopsis of the principal provisions of the sections of the act, involved in these cases, follows.

By section 18 it is provided that, upon petition to the state engineer of one or more of the water users of a stream or stream system or upon his own initiative, it is the duty of the state engineer to enter an order for the determination of relative rights.

Section 19 provides for publication of notice of such

order and the date when the state engineer shall begin examination of the rights of water users, and that water claimants will be required to furnish proofs of their claims.

Sections 20 and 21 provide for the gathering of certain data and information by the state engineer and matters essential to the proper determination of the water rights of the stream, which data shall consist of surveys, maps, measurements, etc.

Section 22 provides that, upon the filing of such data and information, the state engineer shall publish and mail notice to claimants of the date when he is to commence the taking of proofs of the water rights and the date prior to which the same must be filed.

Sections 23 and 24 provide that there shall be enclosed in such written notice a blank form, to be filled out and verified by the water claimant in furnishing information for the determination of the claimant's rights.

Section 25 provides that it shall be the duty of the state engineer to commence the taking of proofs on the day fixed in the notice, and that he shall proceed therewith during the period fixed by him and named in the said notice, after which no proofs can be received or filed, except for cause shown; that failure to furnish proofs within the time prescribed is a misdemeanor; that the state engineer may, in his discretion, accept and use certain records as proof of claims; that a finding rendered by the state engineer upon a water claim, the holder of which is in default, shall be given a later priority than the rights of claimants whose proofs were duly filed.

Section 26 provides for the intervention of persons interested, upon whom no service of notice shall have been had.

Section 28 provides that, as soon as practicable after the expiration of the period fixed in which proofs may be filed, the state engineer shall assemble all proofs filed and prepare an abstract which shall be printed; that thereafter the state engineer shall prepare a notice fixing and setting a time and place when and where the evidence taken by or filed by him shall be open to inspection of all interested persons; that a copy of said notice,

together with a printed copy of the abstract of proofs, shall be delivered or sent by registered mail at least thirty days prior to the first day of such period of inspection to each person who has appeared and filed proof; that such proofs shall be open to inspection.

Section 29 provides that any person, claiming any interest in the stream system, whether claiming under vested title or under permit from the state engineer, who desires to contest any of the statements and proof of claims filed, shall, within twenty days after said evidence and proofs shall have been open to public inspection, in writing, notify the state engineer, stating with reasonable certainty the grounds of the proposed contest; that the statement or proofs of the person whose rights are contested and the verified statement of the contestant shall be deemed sufficient to constitute a proper cause for such contest.

Section 30 provides for the hearing of such contest before the state engineer, the time and manner of conducting the same, and that the evidence in such proceeding shall be confined to the subject enumerated in the notice of contest and answer and reply, when the same are permitted to be filed, and that all testimony taken at such hearing shall be reported and transcribed in its entirety.

Section 33 provides that, after the hearing of contests, it shall be the duty of the state engineer to cause to be entered of record in his office and served on interested parties an order determining and establishing the several rights to the waters of said stream; that the determination of the state engineer shall be in full force and effect from and after the date of such entry unless stayed by an appeal to the courts.

Section 34 provides that aggrieved parties may have, within six months, an appeal from the order of the state engineer to the district court.

Section 35 provides that parties appealing shall file in the district court an undertaking and a notice in writing stating that such parties appeal from the determination and order of the state engineer.

Section 36 provides for notice to the state engineer and to the parties whose rights may be affected by the appeal.

Section 37 provides that the appellants shall file with the clerk of the district court a certified transcript of the order of determination and the records, maps, evidence, and papers used in the hearing, together with the petition setting out the cause of the complaint of the party or parties appealing, to which petition all parties joined as appellees shall be served with notice by the issuance of a summons as in actions of law.

Section 38 provides that the proceedings on appeal shall be conducted according to the provisions of the civil code of procedure governing appeals from the justice court to the district court and from the district court to the supreme court.

Section 39 provides that a copy of any judgment rendered by the district court shall be transmitted to and be controlling upon the state engineer.

Section 43 provides that the civil practice act shall govern appeals from the decrees of the district court and for rehearings in the supreme court.

Section 44 provides that the final orders or decrees of the state engineer in the proceedings shall be conclusive as to all prior appropriations, and the rights of all existing claimants subject to the provisions for appeals, rehearings, and for the reopening of orders and decrees therein.

Section 45 provides that, in any suit which may be brought in any district court for the determination of water rights, all interested persons shall be made parties; that, in the case of any suit now pending or hereafter commenced, the same may be transferred to the state engineer for determination, as in this act provided.

Section 52 provides for the appointment by the state board of irrigation of water commissioners for each water district, and provides for the salary and duties of such commissioners, and that the same shall be charged against the water users.

Section 53 provides that the state engineer shall divide the state into water districts to be so constituted as to

insure the best protection for the water users and the most economical supervision upon the part of the state; said water districts to be created as the necessity therefor shall arise, and shall be created from time to time as the priorities and claims to the streams of the state shall be determined.

Section 54 provides that it shall be the duty of the state engineer to divide, or cause to be divided, the waters of the natural streams, or other sources of supply in the state, among the several ditches or reservoirs taking water therefrom, according to the respective rights of users, in whole or in part, and to regulate, or to cause to be regulated, the controlling works of reservoirs as may be necessary to insure proper distribution of waters thereof.

Sections 54–56, inclusive, contain other and additional provisions relative to the powers and duties of the state engineer and water commissioners in the administration of the distribution of the waters of any stream or stream system.

Section 84 of the act provides: "Nothing in this act contained shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this act where appropriations have been initiated in accordance with law prior to the approval of this act. Any and all appropriations based upon applications and permits now on file in the state engineer's office, shall be perfected in accordance with the laws in force at the time of their filing."

Section 87 of the act provides: "Each section of this act and every part of each section is hereby declared to be independent sections, and parts of sections, and the holding of any section or part thereof to be void or ineffective for any cause shall not be deemed to affect any section or any part thereof."

*John M. Chartz,* District Attorney of Ormsby County, for Relator:

The provisions of the water law of 1913 authorizing

the state engineer to determine relative rights of water appropriators and users is unconstitutional in that it deprives the owners of such rights of due process of law. (Am. & Eng. Enc. of Law, vol. 10, p. 291; *Braceville Coal Co.* v. *People,* 147 Ill. 66; *Hager* v. *Reclamation District,* 111 U. S. 701; *Davidson* v. *New Orleans,* 96 U. S. 97; *Bertholf* v. *O'Reilly,* 74 N. Y. 98; *Davis* v. *McKeeby,* 5 Nev. 569; *Gibson* v. *Mason,* 5 Nev. 283.)

The water law of 1913 violates article 3, section 1, and article 6, section 1, of the state constitution in that it invests the state engineer with judicial powers.    (*Thorp* v. *Woolman,* 1 Mont. 168.)

The water law of 1913 is violative of article 6, section 6, of the constitution of the state prescribing the jurisdiction of district courts.    (*Caulfield* v. *Hudson,* 3 Cal. 389; *Reed* v. *McCormick,* 4 Cal. 342; *People* v. *Fowler,* 9 Cal. 85.)

*Summerfield & Richards,* for Respondent:

The fatal mistake made by the assailants of the water law of 1913 is in assuming that the phrase "due process of law" necessarily is confined to proceedings of a strictly judicial nature.    One of the many correct definitions of the phrase is: "An orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights." (*Meyers* v. *Shields,* 61 Fed. 713; *Zeigler* v. *Smith R. Co.,* 58 Ala. 594; *McGavock* v. *Omaha,* 40 Neb. 64; *State* v. *Billings,* 55 Minn. 467; *In Re Union R. Co.,* 112 N. Y. 61; *Gibson* v. *Mason,* 5 Nev. 283; *Pennoyer* v. *Neff,* 95 U. S. 714; 8 Cyc. 1082.)

The act under assault all the way scrupulously provides for orderly procedure and carefully makes notice to all interested parties a requisite to proceeding.    It affords to all whose rights may be affected the most ample opportunities to be heard, to defend, and to protect their rights.    If this act is fairly observed, no real or substantial rights can be lost by any one except as a result of his neglect or indifference.

Again, it has been well said "the constitutional provisions that no person shall be deprived of life,

liberty, or property without due process of law extend to every governmental proceeding which may interfere with personal or property rights, whether the proceeding be legislative, judicial, administrative, or executive." (8 Cyc. 1083; *Holden* v. *Hardy*, 169 U. S. 366; *Hurtado* v. *California*, 110 U. S. 516; *Dorman* v. *State*, 34 Ala. 216; *Sherman* v. *Buick*, 32 Cal. 241; *Camp* v. *Rogers*, 44 Conn. 291; *Foule* v. *Mann*, 53 Iowa, 42; *Louisville* v. *Cochrane*, 82 Ky. 15; *State* v. *Doherty*, 60 Me. 504; *Crane* v. *Waldron*, 94 N. W. 593; *State* v. *Examiners*, 34 Minn. 387; *Clark* v. *Mitchell*, 64 Mo. 564; *Low* v. *Printing Co.*, 41 Neb. 127; *Stuart* v. *Palmer*, 74 N. Y. 183; *Huber* v. *Reilley*, 53 Pa. St. 112; *Davis* v. *State*, 3 Lea, 376.)

The procedure prescribed by the law attacked preserves the substance of all acquired water rights and amply provides opportunities for the dissatisfied to invoke the equal protection of law by appropriate and adequate judicial proceedings. This being so, it is difficult to perceive how it denies due process of law. (8 Cyc. 1095; *Farm Inv. Co.* v. *Carpenter*, 61 Pac. 258; *Ludeling* v. *Chaffu*, 143 U. S. 301; *Leeper* v. *Texas*, 139 U. S. 462; *Lynde* v. *Lynde*, 181 U. S. 183; *Salt Creek Co.* v. *Parks*, 50 Ohio St. 568.)

The powers conferred by the act are administrative and *quasi*-judicial and are not judicial in the constitutional sense in violation of article 3, section 1, of the state constitution. (*Farm Inv. Co.* v. *Carpenter*, 61 Pac. 258; *Crawford* v. *Hathaway*, 93 N. W. 781.)

While it is true that the Wyoming constitution created a board of control to have supervision of the appropriation, distribution, and diversion of the water of that state (7 American Constitutions and Charters, 4138), yet that fact does not weaken the force of the decision in *Farm Inv. Co.* v. *Carpenter*, *supra*, as applied to the facts of this proceeding. What is not constitutionally inhibited belongs as fully to the lawmaking power as though it was constitutionally conferred.

It is well to remember, however, that the constitution of Nebraska is, like our own, silent upon the subject of

irrigation and water rights.    (4 American Constitutions
and Charters, 2631, *et seq.*)

It would seem, therefore, that the decision in *Crawford*
v. *Hathaway, supra,* is well worthy of careful considera-
tion in this proceeding and especially for the reason that
it adopted the views of the Wyoming Supreme Court
regardless of the fact that the Wyoming constitution
contained an express article on irrigation and water
rights.

That the Carpenter act does not attempt to confer upon
the state engineer any powers nearer a judicial nature
than is conferred by law upon some of our state commis-
sions and officials, such as the railroad commission, the
industrial commission, the state board of health, state
board of bank commissioners and bank examiners, and
numerous other bodies or officials created by statute is
clearly manifest.    It seems equally apparent that none of
them exercise the powers belonging to the judiciary in
the constitutional sense.

The act is not violative of section 20 of article 4 of our
state constitution.    The act in no wise attempts to strip
courts of their constitutional jurisdiction or to fasten on
them a novel course of practice, but, upon the contrary,
expressly permits all aggrieved parties to invoke the
exercise of the full powers of the courts in proceedings
*de novo* in character, and under simplified pleadings
already framed, if they so desire.    (*State* v. *McKinney,* 5
Nev. 194; *Holmes* v. *Mattson,* 111 Ill. 27; *Insurance Co.* v.
*Bachler,* 44 Neb. 549; *Dallas* v. *Western Co.,* 83 Tex. 243;
*McDonald* v. *Conniff,* 99 Cal. 386; *Citizens Co.* v. *Jolly,* 161
Ind. 80; *Cincinnati Co.* v. *Felix,* 25 Ohio Cir. Ct. 393;
*Jacksonville Co.* v. *Adams,* 33 Fla. 608; *Rider* v. *Mt.
Vernon,* 87 Hun, 27; *Boggs* v. *Ganeard,* 148 Cal. 711; *State*
v. *Lumber Co.,* 170 Mo. 7; *Title Co.* v. *Kenigan,* 150
Cal. 289.)

The water law of 1913 is not violative of section 6 of
article 4 of the state constitution.    Our constitution does
not, in words, vest in the district courts *exclusive* juris-
diction or *exclusive* final appellate jurisdiction.    While
the court may have original jurisdiction or final appellate

jurisdiction in the cases enumerated in the organic law, yet it does not necessarily follow that such jurisdiction is exclusive. The word "appeal" as used in the act (secs. 34, 35, 36, 41, 42) means neither more nor less than that any one feeling himself aggrieved at the rulings of the state engineer may refer his grievance to the proper district court, which, in the exercise of its original jurisdiction, may try the case *de novo,* unhampered and unrestricted by any previous action of the state engineer, and that, after the district court has rendered its judgment or decree in the matter, appeal therefrom is expressly permitted to the supreme court.

Section 44 of the act is not an usurpation of the functions of the courts for the reason that the very same section provides that the same shall be "subject, however, to the provisions of law for appeals, rehearings, and for the reopening of the orders or decrees therein."

The act under consideration may be compared with other acts found in our statute books with reference to the extent and nature of the power and authority conferred upon officials and boards created by statute. (*State v. State B. & T. Co.*, 31 Nev. 456; *Southern Pacific Co.* v. *Bartine, et al.*, 170 Fed. 725.)

*Cheney, Downer, Price & Hawkins, amicus curiæ.*
[NOTE—See brief under No. 2115.]

*Geo. B. Thatcher*, Attorney-General, for Appellant:

Under the doctrine of appropriations in the arid states, there is no property in the stream itself. (*Wheeler* v. *Irrigation Co.*, 17 Pac. 487; *Fort Morgan Co.* v. *South Platte Co.*, 30 Pac. 1032; *Farm Inv. Co.* v. *Carpenter*, 50 L. R. A. 757; *Strait* v. *Brown*, 16 Nev. 317; *Reno S. Works* v. *Stevenson*, 20 Nev. 269; *Jones* v. *Adams,* 19 Nev. 78; Cutting's Compiled Laws, sec. 354.)

If the state is the owner of the water and the streams, most assuredly it would seem to follow that the state has the right to regulate and control. It has the right through administrative officers to make investigation of the streams, determine the amount of water appropriated,

and the amount unappropriated and remaining in the state, and to police and regulate the distribution to appropriators. To do these things it is necessary that some one be authorized by law to make these investigations, and under the water law of 1913 the state engineer is vested with these powers. (*White* v. *Farmers' Highline C. & R. Co.*, 43 Pac. 1028.)

That the state regulation and control is within the police power of the state has been decided in numerous cases. (*Farmers' Independent Ditch Co.* v. *Agricultural Ditch Co.*, 45 Pac. 444; *White* v. *Farmers' Highline C. & R. Co.*, 43 Pac. 1028, 31 L. R. A. 828; *Louden Irr. Co.* v. *Handy Ditch Co.*, 43 Pac. 535.)

The water law of 1913 is not violative of section 1 of article 3, dividing the state government into three distinct departments, or with section 1 of article 6, which invests the judicial power of the state in the supreme court, district courts, and justices of the peace. (*Farm. Inv. Co.* v. *Carpenter*, 50 L. R. A. 747; *Crawford Co.* v. *Hathaway*, 67 Neb. 325; *McCook Irr. Co.* v. *Crews*, 70 Neb. 115; *Irrigation District* v. *Tri-State Land Co.*, 138 N. W. 180; *Farmers' Canal Co.* v. *Frank*, 72 Neb. 136–152; *Sawyer* v. *Dooley*, 21 Nev. 390.)

This court will observe from a reading and comparison of the Nevada act and the Wyoming and Nebraska acts that our act is adopted from those states. The sections under attack here and the corresponding sections of the Wyoming and Nebraska acts are as follows:

| Nevada | Wyoming | Nebraska | Nevada | Wyoming | Nebraska |
|--------|---------|----------|--------|---------|----------|
| Sec. 18 | 763–4 | 6795–7 | Sec. 35 | 780 | 6802 |
| Sec. 19 | 765 | 6797 | Sec. 36 | 781 | 6803 |
| Sec. 20 | 776 | 6798 | Sec. 37 | 782 | 6804 |
| Sec. 22 | 767 | 6798 | Sec. 38 | 783 | 6804 |
| Sec. 23 | 768 | 6799 | Sec. 39 | 784 | |
| Sec. 24 | 769 | | Sec. 40 | 785 | |
| Sec. 25 | | 6805 | Sec. 41 | 786 | |
| Sec. 28 | 770–1 | | Sec. 42 | 787 | |
| Sec. 29 | 772–3 | | Sec. 43 | 787 | 6804 |
| Sec. 32 | 774 | | Sec. 44 | 793 | |
| Sec. 33 | 777–8 | | Sec. 51 | | 6800 |
| Sec. 34 | 779 | 6801 | | | |

The construction placed upon substantially the same acts by the courts of Wyoming and Nebraska is binding upon the courts of this state. (*Cowhick* v. *Shingle*, 5 Wyo. 87, 63 Am. St. Rep. 1; *Laporte* v. *Gamewell Tel. Co.*, 146 Ind. 466, 58 Am. St. Rep. 359.)

The water law of 1913 is not violative of section 6 of article 6 of the constitution prescribing the original and appellate jurisdiction of district courts. (*Farm Inv. Co.* v. *Carpenter*, 50 L. R. A. 755; *Dickson* v. *Corbett*, 10 Nev. 439.)

*Cheney, Downer, Price & Hawkins*, for Respondents:

There are three primary questions to be determined:

First—Does the water law of 1913, in fact, authorize and empower the state engineer to adjudicate and determine—thereby fixing the date of priority, the quantity of water and the place and manner of use, by a final order or decree—the right, title, and interest of plaintiffs to the use of water, when those rights, titles, and interests were initiated and became vested property rights, according to the law prior to the creation of the office of state engineer, and prior to any statute in reference thereto, and prior to the approval of said water law of 1913?

Second—Does said water law of 1913 mean what it says in section 84 thereof, and therefore upon its face show that it does not apply to the vested right of any person to the use of water acquired in accordance with law prior to the approval of said water law of 1913?

Third—If said water law of 1913 does in fact authorize and empower the state engineer to adjudicate and determine—thereby fixing the date of priority, quantity of water and the place and manner of use by final order or decree—the right, title, and interest of plaintiffs and other appropriators to the use of water, when those rights, titles, and interests were initiated and became vested property rights according to the law, prior to the creation of the office of state engineer, and prior to any statute in reference thereto, and prior to the approval

of said water law of 1913—are the sections of said water law of 1913, so attempting to vest in the state engineer such powers, in contravention of the provisions of the constitution of the United States and the constitution of the State of Nevada?

If the statute is given the construction contended for by plaintiffs and respondents—to the effect that it does not apply to or govern or provide for the adjudication and determination by the state engineer of appropriations which were vested property rights before the creation of the office of state engineer—no hardship will be imposed upon any appropriator of water. It is well settled that the right to the use of water appropriated is real property and governed by the rules and laws applicable to real property. If the title or right to the use of water is questioned by any one, the parties thereto are entitled to have their rights determined in court; if the construction of the statute by the state engineer, to the effect that he may adjudicate and determine these controversies, is true, then the state engineer may take from one appropriator his vested property right and give it to another claimant, which said final order and decree of the state engineer is, according to section 44 of said statute, conclusive, subject, however, to the right of appeal, etc.; but the right of appeal mentioned is so hedged about and is so expensive as to preclude the average farmer who owns a few hundred acres of land from having or obtaining his day in court to justify his claim to the property right, which became under the laws a vested property right. Can it be said that such provision is in harmony with section 2 and section 84 of said water law of 1913?

If the statute only applies to appropriations initiated and made subsequent to the approval of said water law of 1913, the solution is easy because "all persons having interests adverse to the parties appealing" would be only those persons whose rights had accrued subsequent to the approval of the water law of 1913, and procedure would be an easy matter, and of little expense. The construction contended for by us would not impair the

operation of the statute, nor would it impair or affect the vested rights of any person to the use of water where the appropriations have been initiated in accordance with the law prior to the approval of this act.

An appropriation of water may be made in the absence of constitutional or statutory provisions, and the appropriations thus made becomes a vested property right, and it is the duty of both national and state governments to protect it. It seems clear that the appropriations, made in the absence of restrictions, cannot be impaired by subsequent legislation, but such legislation would only apply to appropriations made after and in accordance with such legislation. (*Coffin* v. *Left Hand Ditch Co.*, 6 Colo. 443.)

When the appropriations now owned by plaintiffs were acquired, there were no statutes placing any limitations upon the appropriation, place or manner of use—by the water law of 1913 the final order and decree of the state engineer will place limitations upon these vested rights, which limitations will impair or affect the appropriations, which is contrary to the express provisions of section 84 of said water law of 1913, and also in violation of law.

The contention of the state engineer, that the water law of 1913 should receive the same construction by this court as was given the water statute of Wyoming and Nebraska by the courts of those states, is without any support in fact or law.

While it is true that the water law of 1913 is, in some respects, similar to the water statute of Wyoming and of Nebraska, yet it is also true that upon the whole it is entirely different. There is not to be found in the statute of Wyoming or of Nebraska any such provisions as are contained in section 84 of the water law of 1913. This difference alone is so marked and clear-cut as to clearly distinguish the statutes and decisions of Wyoming and Nebraska from the water law of 1913.

We, therefore, submit that the proper construction of the water law of 1913 will result in answering the first question, hereinabove submitted, in the negative, and in

answering the second question, hereinabove submitted, in the affirmative.

We will now consider the third question hereinabove submitted. Our contention is that if the water law of 1913 is to be construed as contended for by the state engineer—which is to the effect that all appropriations of water which were made and became vested property rights prior to the approval of said water law of 1913 must be submitted to and adjudicated by said state engineer, said adjudication and determination having the same force and effect as an adjudication and determination of said rights if made by court—then those sections of said water law of 1913, being sections 18 to 58, both inclusive, except section 45, are in contravention of certain provisions of the constitution of the United States and certain provisions of the constitution of Nevada, and are, therefore, invalid, null and void.

Appellant argues that in order that the state may properly, or at all, regulate the use and distribution of water and grant further appropriations, it is necessary that the state, *through its administrative officers*, determine the relative rights of the appropriators upon the streams and stream systems. That such a contention is not correct is clearly shown by the authorities cited by appellant in support of the proposition announced by him, which authorities are from Colorado, where the administrative officers have nothing to do with the adjudication or determination of the relative or any rights of appropriators upon the streams or stream systems.

The general purpose of all water statutes, such as we are now considering, is to provide a statutory procedure whereby the rights already acquired and vested may be, in one general proceeding, reduced to permanent form and embodied and preserved in an order or decree. The proceeding, strictly speaking, is not one *in personam*, nor is it a proceeding *in rem*, but is rather a *sui generis* proceeding to quiet title or to perpetuate in permanent form the rights theretofore acquired. (*New Mercer Ditch Co. v. Armstrong*, 40 Pac. 989.)

The decree gives no new right, but only establishes an

old one and perpetuates evidence thereof. (*Alamosa Co.* v. *Nelson,* 93 Pac. 1114; *Rickey Land Co.* v. *Miller & Lux,* 152 Fed. 11; *Crippen* v. *X. Y. Irr. Ditch Co.,* 76 Pac. 794, 797.)·

A priority right to the use of water being a property right, it is protected by the constitution so that no person can be deprived of it without due process of law. Is the adjudication and determination of a priority right to the use of water a judicial determination? Wyoming and Nebraska are the only states in the Union which have answered the question last submitted in the negative.

Under the water law of 1913, if it is to receive from this court the construction placed upon it by appellant, the state engineer is vested with the absolute power to take from one and give to another real property—not in accordance with law governing all other kinds of real property, but according to the conclusion reached by the state engineer as to what is just and right, from *ex parte* statements of interested parties and from investigations made by the state engineer and his assistants. The appropriator whose rights are thereby impaired may never know upon what evidence the decision or decree of the state engineer is based. Such a proposition was submitted in *Interstate Commerce Comm.* v. *L. & N. R. Co.,* 227 U. S. 88, 93, and the contentions of the government were overruled.

If the adjudication and determination by the state engineer were only for the purpose of enabling his office to determine whether or not an application to appropriate waters, claimed by the applicant to be unappropriated, should be granted or denied, or to enable the state engineer to determine whether or not he would cancel a permit to appropriate water (as was the Idaho case of *Speer* v. *Stephenson,* 102 Pac. 365, cited by appellant), we would have a different question, and such determination would be an·exercise of an administrative function. Such decisions do not affect any vested property rights. (Kinney on Irr. and Water Rights, 2d ed.

vol. 3, sec. 1586, p. 2884; sec. 1595, p. 2901–3; *Davies* v. *McKeeby*, 5 Nev. 369, 371.)

The provisions of the constitution contravened by the water law of 1913 are: Fourteenth Amendment to the Constitution of the United States; State Constitution, sec. 8, art. 1; sec. 1, art. 3; sec. 20, art. 4; sec. 21, art. 4; sec. 1, art. 6; sec. 4, art. 6; sec. 6, art. 6.

The statutory declaration, to the effect that the water of all sources of water supply not held in private ownership belong to the public, which was first declared by Statutes 1903, p. 24, does not and cannot affect any vested right to the use of water acquired prior to such statutory declaration. (*Palmer* v. *R. R. Comm. of California*, 138 Pac. 997, 1002.)

The public parted with whatever title it may have had to the water so appropriated, and if the appropriator does not, by some act of his own, lose the right to the use of the water so appropriated, the state or public has not and cannot acquire any further right, title or interest therein.

Every authority, both text and decision, so far as we are advised, except the courts in Wyoming and Nebraska, holds *that the proceedings for the determination of existing vested rights to the use of water are strictly judicial.*

The case cited (*Southern Pacific Co.* v. *Bartine*, 170 Fed. 725) is easily distinguished from the case at bar, as are the other cases cited by the state engineer.

Nevada has no constitutional provision concerning water or water rights, as distinguished from any other property rights. (*Thorpe* v. *Woolman*, 1 Mont. 168, 170.)

Other decisions construing similar statutes conferring similar powers upon a nonjudicial officer or board, and holding that the powers conferred were judicial and that the proceedings therein were judicial, and that the statutes, therefore, were unconstitutional, are: *People* v. *Mallary* (Ill.) 63 N. E. 508; *In Re Dumford* (Kan.) 53 Pac. 92; *Fitch* v. *Board of Auditors of Claims* (Mich.) 94 N. W. 952; *People* v. *Dunn* (N. Y.) 52 N. E. 572; *Witter* v. *Cook County Comrs.* (Ill.) 100 N. E. 148; *State* v. *Blaisdell*

(N. D.) 132 N. W. 769; *Carolina Glass Co.* v. *State* (S. C.) 69 S. E. 391; *State* v. *Brill* (Minn.) 111 N. W. 294, 639; *State* v. *Chaney* (Okl.) 102 Pac. 133; *Dupree* v. *State* (Tex.) 119 S. W. 301; Weil on Water Rights in the Western States, 3d ed. vol. 2, sec. 1194, p. 1108.

Moreover, where a state enacts a statute of another state, which has been construed by the latter's courts, the former state is not bound by such construction, when not in harmony with the spirit of its legislation and decisions. (*F. M. Davis Iron Works Co.* v. *White,* 71 Pac. 384; *Bowers* v. *Smith,* 20 S. W. 101; *Oleson* v. *Wilson,* 52 Pac. 372; *Smith* v. *Dayton C. & I. Co.,* 92 S. W. 62; *State* v. *Mortenson,* 73 Pac. 562; *Ancient Order of Hibernians* v. *Sparrow,* 74 Pac. 197; *Swooford Bros. Dry Goods Co.* v. *Mills,* 86 Fed. 556, 560; *Voss* v. *Waterloo Water Co.,* 71 N. E. 208, 212–213.)

Section 84 of the water law of 1913 does not appear in the Wyoming or Nebraska statute, which fact alone, if nothing else appeared in the statute, distinguishes our statute from the Wyoming and Nebraska statutes, and shows that the statutory rule of construction contended for by appellant has no application here. (*Kirman* v. *Powning,* 25 Nev. 378, 397.)

It will be admitted that the state engineer may, under the water law of 1913, deprive one of his vested property. If one is so deprived, is it by due process of law? To take from one that which he claims and give it to another, is to adjudicate the title to disputed ownership of property. Such adjudication cannot be had under the water law of 1913. (*Gibson* v. *Mason,* 5 Nev. 283, 302; *Persing* v. *Reno B. Co.,* 30 Nev. 342, 349; *Golden* v. *District Court,* 31 Nev. 250, 264; *State* v. *Guilbert,* 47 N. E. 551; *People* v. *Simon,* 52 N. E. 910; *Brown* v. *Board,* 50 Miss. 468.)

Section 6, art. 6, Nevada Constitution, is violated by the water law of 1913, in that it provides for the *first trial,* to establish existing vested rights to the use of water, to be had before the state engineer, and thereby deprives the

district court of its *original* jurisdiction and transforms the district court from a court of original jurisdiction into an appellate court. We submit, under the express terms of section 6, art. 6, of our constitution, that no appeal lies from the final order or decree of the state engineer adjudicating vested property rights, and that the district court has no jurisdiction to entertain an appeal from such final order or decree of the state engineer, and that the statute attempting to confer or give the right of appeal from such order to the district court is unconstitutional. (*Caulfield* v. *Hudson*, 3 Cal. 389, 390; *Reed* v. *McCormick*, 4 Cal. 342; *People* v. *Fowler*, 9 Cal. 85; *Lake* v. *Lake*, 17 Nev. 230, 238.)

Under section 6, art. 6 of our constitution, the district courts have *original* jurisdiction of the adjudication and determination of existing rights to the use of water. If these rights are determined by the state engineer *in the first instance*, then the district court is necessarily deprived of its original jurisdiction, and the act is unconstitutional and void. (*Castner* v. *Chandler*, 2 Minn. 86, 88; *Reed* v. *McCormick*, 4 Cal. 342; *People* v. *Fowler*, 9 Cal. 85, 86; *State* v. *Rising*, 10 Nev. 97, 101–102.)

Under the provisions of the Wyoming and Nebraska constitutions the courts of those states held that an appeal from the board of control and from the board of irrigation, respectively, would lie to the respective district courts, therefore holding that the proceedings before the respective boards was a "case," from the determination of which an appeal would lie, and the contention of appellant that the proceeding before the state engineer is not a "case" to be without merit.

This court has construed section 6, article 6, of the constitution as making the appellate jurisdiction of the district court final in the following cases: *Paul* v. *Beegan*, 1 Nev. 329, 333; *Leonard* v. *Peacock*, 8 Nev. 157, 161; *State* v. *Rising*, 10 Nev. 97, 101; *Bancroft* v. *Pike*, 33 Nev. 53, 80; *Floyd* v. *Sixth Judicial District Court*, 36 Nev. 349.

Whenever an act undertakes to determine, or to confer

upon some one the power to determine, a question of right or obligation or of title to property as the foundation upon which it proceeds, such as is the contention of the state engineer under the present act, to determine existing vested rights to the use of water, such act is to that extent a judicial one. (*Smith* v. *Strother*, 8 Pac. 852, 854; *Tanner* v. *Nelson*, 70 Pac. 984, 986; *In Re Sinking Fund Cases*, 99 U. S. 700, 761; *Whitaker* v. *Chicago R. I. & P. R. Co.*, 160 S. W. 1009, 1012; *Marbury* v. *Madison*, 1 Cranch, 368, 388.)

Opinion by NORCROSS, J. (after stating the facts) :

The water law of 1913 contains ninety sections and was manifestly designed to be a comprehensive statute covering the water law of this state. Many of the provisions of the act are not questioned in these proceedings. Those sections only are attacked which authorize the state engineer to determine the relative rights of the appropriators of water upon the streams in this state, which provide for appeals to the courts from the determinations made by him, and which provide for state control, through the office of the state engineer, of the distribution of such waters to the persons entitled thereto.

[1] It is manifest, both from the title and body of the act, that one of the main purposes of this law, and doubtless the principal purpose, was to place the distribution of the waters of the streams or stream systems of the state to the persons entitled thereto, under state control. The manner of such control is prescribed in sections 52 to 56, inclusive. It is not seriously urged, if we understand counsel correctly, that the state, within its police power, may not so regulate the distribution of the waters of the state. It is a matter, we think, clearly within the lawful exercise of such power. The public welfare is very greatly interested in the largest economical use of the waters of the state for agricultural, mining, power, and other purposes. While the police power cannot be made an excuse for the enactment of unreasonable, unjust, or

oppressive laws, it may be legitimately exercised for the purpose of preserving, conserving, and improving the public health, safety, morals, and general welfare.

"Private rights are often involved in its exercise, but a law is not on that account rendered invalid or unconstitutional." (*In Re Street Railway Corporation,* 24 R. I. 603, 54 Atl. 602, 61 L. R. A. 612.)

As said by Judge Cooley in his work on Constitutional Limitations (7th ed.), p. 829: It "embraces its whole system of internal regulation by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others."

See, also, *In Re Boyce,* 27 Nev. 299, 75 Pac. 1, 65 L. R. A. 47, 1 Ann. Cas. 66; *Ex Parte Pittman,* 31 Nev. 43, 99 Pac. 700, 22 L. R. A. n. s. 266, 20 Ann. Cas. 1319; *Noble State Bank* v. *Haskell,* 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. n. s. 1062, Ann. Cas. 1912A, 487; *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616; *State* v. *Bunting,* 139 Pac. 731, and authorities therein cited.

It is difficult to perceive how there may be any effective regulation or control over the water rights of a stream system like that of the Humboldt River and its tributaries, except through some form of state supervision. This river extends for a distance of about 300 miles, is in five counties and three judicial districts. According to the brief of counsel for respondents in case No. 2115, there are from 700 to 1,000 water users on the Humboldt River system. Undoubtedly other claimants are constantly applying for water rights on this system. The state at large is not only interested in protecting prior appropriators in their rights, but is interested in the conservation of the waters of the stream system to the end that the largest possible amount of land may be brought under cultivation through an economical

diversion and use of such waters. To accomplish this beneficent object, the state has a right to exercise a superintending control over the entire river system. It is not to be assumed that so great and so important an undertaking cannot be fairly and intelligently administered. If so administered, it would seem that it ought to be particularly advantageous to prior appropriators. It is the history of irrigation in this and other states that the first appropriators of waters upon the natural streams are frequently forced into long, vexatious, and expensive litigation to protect their rights against subsequent appropriators. The case of *Bliss* v. *Grayson & Anderson* in the state courts, involving water rights on the Humboldt River, and *Miller & Lux* v. *Rickey, et al.,* in the federal court, involving water rights on the Walker River, are conspicuous examples, showing the need of some kind of intelligent state intervention. The case of *Bliss* v. *Grayson,* begun in the district court of Humboldt County in July 1889, reached the supreme court a decade later, with the result of a reversal and a new trial ordered. (*Bliss* v. *Grayson,* 24 Nev. 422, 56 Pac. 231.)

[2] If it may be conceded that the relative rights of all water users upon a river system may be ascertained by some lawful method of procedure, then no constitutional right can be said to be infringed by a system of state control over the water of a river system such as is provided in sections 52 to 56, inclusive, for such system is designed to protect all water users in their rights. The courts of all the states that have adopted similar water laws have held the same to be within the lawful exercise of the police power of the state. See authorities hereinafter cited.

[3] In considering the constitutionality of sections 18 to 51, inclusive, they should be viewed with reference to the purpose designed to be accomplished by sections 52 to 56. The latter sections are clearly administrative. Before they can be put into force, the relative rights of water users upon a stream must be ascertained.

[4] It is contended here that the manner prescribed

by the statute for the ascertainment of these relative rights is violative of the constitution in that it amounts to a deprivation of property rights, without due process of law; that it confers judicial powers upon an executive officer; and that it invades the jurisdiction of the district courts.

It cannot, we think, be said that the provisions of the act contemplate the deprivation of property without due process of law. It should, we think, be assumed that water claimants or appropriators will present their claims according to their respective rights, and it must be presumed, until the contrary appears, that a public officer will perform his duties. The act contemplates the securing to water users their rights, not the taking of the same away. The fact that human judgment is liable to err will not justify an assumption in advance that it will err in all or any cases. Assuming, however, that errors will be made by the state engineer in determining the amount or time of an appropriator's right, such right would not thereby be taken from the appropriator without due process of law. ( For purposes of the state's exercise of its powers of administration, the enjoyment of such right may be affected, temporarily at least, but only after a notice and a hearing. The right, however, to have the matter finally adjudicated by the courts is not attempted to be taken away. Most water rights upon the streams of this state are undetermined by any judicial decree or other record. While the right exists, it is undefined. For the state, however, to administer such rights, it is necessary that they should be defined.

[5] For the purposes of administration, the act prescribes a method of notice and a hearing that applies alike to all similarly situated. True, this is not a determination by a court, but applicants are not for that reason deprived of property without due process of law. As said in 8 Cyc. 1084:

"Although the due process of law implies generally the course of judicial proceedings established at the time the constitution was framed, due process is not limited

to such, but refers also to many measures of a summary nature."

This court in a few cases has had occasion to refer to the constitutional guaranty of due process of law, but those cases were dealing with matters of court procedure; and, while certain expressions were therein used which, taken literally, would seem to restrict the meaning of due process of law to determinations by a court, no question was presented in those cases as to whether the constitutional guaranty had any such restricted limitations. Many cases may be found sustaining the authority of administrative officers or boards to determine personal or property rights as not violative of due process of law.

In *Blach* v. *Glenn,* 85 Kan. 735, 119 Pac. 67, 43 L. R. A. n. s. 1030, Ann. Cas. 1913A, 406, the Supreme Court of Kansas said:

"It has been held by the Supreme Court of the United States that the phrase 'due process of law' does not necessarily mean a judicial proceeding. (*McMillen* v. *Anderson,* 95 U. S. 37, 24 L. Ed. 335.) On the other hand it does not necessarily mean a special tribunal created for the express purpose of hearing the merits of the particular controversy. Where ample notice is provided which gives to the property owner an opportunity to have a hearing in any court of competent jurisdiction before his property is affected, he is afforded due process of law."

In *Enterprise Irrigation District* v. *Tri-State Land Co.,* 138 N. W. 179, and in *Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918, the Supreme Courts of Nebraska and Wyoming held similar provisions in the water laws of those states to be due process of law.

See, also, *Wedemeyer* v. *Crouch,* 68 Wash. 14, 122 Pac. 366, 43 L. R. A. n. s. 1090; *Louisville & N. R. Co.* v. *Garrett,* 231 U. S. 298, 34 Sup. Ct. 48; *San Diego L. & T. Co.* v. *National City,* 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154; *Spring Valley Water Works* v. *San Francisco,* 82 .

Cal. 296, 22 Pac. 910, 6 L. R. A. 756, 16 Am. St. Rep. 116;
*Meyers* v. *Shields,* 61 Fed. 713; *Pennoyer* v. *Neff,* 95 U. S.
714, 24 L. Ed. 565; *Klafter* v. *State Board of Examiners
of Architects,* 259 Ill. 15, 102 N. E. 193, 46 L. R. A. n. s.
532, Ann. Cas. 1914B, 1221; *Stettler* v. *O'Hara,* 139 Pac.
743.

The provisions of the act in question do not violate the
due process of law provisions of the state or federal
constitutions.

[6] It is contended that these provisions of the statute
are in violation of article 3 of the state constitution.
Considering this article, this court in *Sawyer* v. *Dooley,*
21 Nev. 390, 396, 32 Pac. 437, 439, speaking through
Bigelow, J., said: "That article divides the state gov-
ernment into three great departments, and directs that
'no person charged with the exercise of powers properly
belonging to one of these departments shall exercise any
functions appertaining to either of the others, except
in the cases herein expressly directed or permitted.' As
will be noticed, it is the state government, as created by
the constitution, which is divided into departments.
These departments are each charged by other parts of
the constitution with certain duties and functions, and
it is to these that the prohibition just quoted refers. For
instance, the governor or the judiciary shall not be
members of the legislature, nor shall they make the laws
under which we must live. But this is quite a different
thing from saying that no member of the executive or
judicial departments shall exercise powers in their
nature legislative, but which are not particularly charged
by the constitution upon the legislative department; such
as where the board of commissioners for the insane
makes rules for the management of the asylum, or a
court establishes rules for the transaction of the busi-
ness coming before it. It would be impossible to admin-
ister the state government were the officers not permitted
and required, in many instances, to discharge duties in
their nature judicial, in that they must exercise judg-
ment and discretion in determining the facts concerning

which they are called upon to act, and in construing the laws applicable to them.  *  *  *  This construction is supported by two well-considered cases decided by the Supreme Court of California (*People* v. *Provines,* 34 Cal. 520; *Staude* v. *Commissioners,* 61 Cal. 313), where the matter will be found elaborately discussed.  See, also, Story, Const. sec. 525, and *Mayor* v. *State,* 15 Md. 376, 455, 74 Am. Dec. 572."

In *State* v. *State Bank and Trust Co.,* 31 Nev. 456, 103 Pac. 407, 105 Pac. 567, we held that the state banking law providing that, if the bank commissioners, either from the report of the bank examiner, or from their own knowledge, decide that it is unsafe for any such corporation to continue to transact business, they shall authorize the bank examiner to take such control of such corporation, and to hold possession of the same until the order of the court thereafter to be obtained, did not confer judicial powers upon an executive board in violation of the constitution.  See, also, *State, ex rel. Williams,* v. *District Court,* 30 Nev. 225, 94 Pac. 70.  This identical question has been considered by the supreme courts of two states having similar laws, and from which many of the provisions of our statute have been copied. (*Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; *Crawford Co.* v. *Hathaway,* 67 Neb. 325, 367, 93 N. W. 781, 60 L. R. A. 889, 108 Am. St. Rep. 647; *McCook Irrigation & W. P. Co.,* v. *Crews,* 70 Neb. 115, 102 N. W. 249; *Enterprise Irr. District* v. *Tri-State Land Co.,* 92 Neb. 121, 142, 138 N. W. 171, 178.)

In *Enterprise Irrigation District* v. *Tri-State Land Co., supra,* the Nebraska court says: ."In the face of these decisions, it hardly seems necessary to again consider the question, but we have done so, and have examined further authorities.  It is a matter of common knowledge that, both in the administration of the laws of the United States and of the several states, boards of individuals, for the purpose of exercising executive or administrative functions, are often compelled to inquire into and determine questions requiring the exercise of powers judicial in their nature.  Some of such determinations are often,

by virtue of the statutes defining the functions and power of the tribunal, final and decisive, and others are made reviewable by appeal to the courts.  *  *  *  Whether reviewable by the courts or not, the exercise of such powers by tribunals of this nature has seldom been held to be a violation of the constitution in this respect. (McGhee, Due Process of Law, 162, 368; *Reetz* v. *Michigan,* 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563; *Gardner* v. *Bonestell,* 180 U. S. 362, 21 Sup. Ct. 399, 45 L. Ed. 574; *Bates & Guild Co.* v. *Payne,* 194 U. S. 106, 24 Sup. Ct. 595, 48 L. Ed. 894; *People, ex rel. Deneen,* v. *Simon,* 176 Ill. 165, 52 N. E. 910, 44 L. R. A. 801, 68 Am. St. Rep. 175; *Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; *State* v. *Thorne,* 112 Wis. 81, 87 N. W. 797, 55 L. R. A. 956; *Gee Wo* v. *State,* 36 Neb. 241, 54 N. W. 513; *Lincoln Medical College* v. *Poynter,* 60 Neb. 228, 82 N. W. 855.) We are satisfied with the conclusion reached by this court in the cases cited, which were followed in *Farmers' Canal Co.* v. *Frank,* 72 Neb. 136, 100 N. W. 286, and see no reason to change our conclusion in this respect."

In *Farm Investment Co.* v. *Carpenter, supra,* the Supreme Court of Wyoming, considering this question, said: "The statute nowhere attempts to divest the courts of any jurisdiction granted to them by the constitution to redress grievances and afford relief at law or in equity under the ordinary and well-known rules of procedure. A purely statutory proceeding is created to be set in motion by no act or complaint of any injured party, but which in each instance is to be inaugurated by order of the board—a proceeding which is to result, not in a judgment for damages to a party for injuries sustained, nor the issuance of any writ or process known to the law for the purpose of preventing the unlawful invasion of a party's rights or privileges, but the finality of the proceeding is a settlement or adjustment of the priorities of appropriation of the public waters of the state, and is followed by the issuance of a certificate to each appropriator showing his relative standing among other claimants, and the amount of water to which he is found to be

entitled. * * * The supervision of the board affects the water of natural streams, the title to which, while flowing in its accustomed channels, remains in the state or public, and of such a peculiar character that public control is demanded to insure its orderly, economical, and fair distribution. The determination required to be made by the board is, in our opinion, primarily administrative rather than judicial in character. The proceeding is one in which a claimant does not obtain redress for an injury, but secures evidence of title to a valuable right—a right to use a peculiar public commodity. That evidence of title comes properly from an administrative board, which, for the state in its sovereign capacity, represents the public, and is charged with the duty of conserving public as well as private interests. The board, it is true, acts judicially, but the power exercised is *quasi*-judicial only, and such as, under proper circumstances, may appropriately be conferred upon executive officers or boards."

In *Speer* v. *Stephenson,* 16 Idaho, 707, 102 Pac. 365, the Supreme Court of Idaho, considering the provisions of the Idaho statute providing for a contest of a permit issued by the state engineer and vesting power in that officer to cancel such permit, and providing for an appeal to the district court from an order of the state engineer revoking or refusing to revoke such permit, said: "By this statute, where a permit has been granted by the state engineer, permission is also granted to any person holding a permit post-dated to present facts, showing that the holder of the permit has not complied with the law, and authorizes the state engineer, if he finds that the law has not been complied with, to cancel such permit. This is purely a ministerial duty connected with the administration of the law as it is imposed upon the state engineer. A very exhaustive discussion of this question may be found in the case of *Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918. See, also, *Ewing* v. *Mining Co.,* 56

Cal. 649. Many other authorities might be cited which deal with the power exercised by an officer in the administration of his office, but we believe the true rule to be that when a ministerial officer is called upon to decide and determine matters arising in the administration of his office, when such acts are not made final or binding upon the courts of the state, and full opportunity is given to any person aggrieved to have such matters adjudicated in the proper tribunals of the state, the acts of such officer are ministerial, and not judicial."

See, also, *Waha-Lewiston L. & W. Co.* v. *Lewiston Sweetwater Irrigation Co.* (C. C.) 158 Fed. 137; *In Re Silvies River* (D. C.) 199 Fed. 495, 501.

The soundness of the reasoning in the Wyoming and Nebraska decisions holding that the rulings of the state engineer or water board, as the case may be, are primarily administrative, and *quasi*-judicial only, has been questioned by Wiel and Kinney, text-writers on the subject of water law. If the question were before us, unsupported by the decisions of at least two courts, we might be disposed to give more weight to the reasoning advanced by these text-writers and the arguments of counsel supporting the contention that certain provisions of the act are void because vesting judicial powers in an executive officer in violation of the constitution. In a consideration of a question of this kind, however, courts must be governed by rules of construction. It is a fundamental rule that all presumptions are in favor of legislative enactments. Another well-settled rule is that a mere doubt as to whether a statute is violative of a constitutional provision must be resolved in favor of the statute. In the face of the decisions of the courts of two states, which courts have given extensive and repeated consideration to the question, it would be almost presumptuous for a court of a state which has adopted these statutory provisions from the laws of such states, after they had been construed by the highest courts of those states, to say, notwithstanding, that they are unconstitutional beyond all reasonable doubt. The decisions of the

Supreme Court of Idaho on an analogous question and the decisions of federal courts, hereafter quoted from, support the view taken by the Wyoming and Nebraska decisions.

The line between acts of executive officers which are essentially judicial and those which are administrative rather than judicial, although *quasi*-judicial, is not always easy to draw. Some courts have adopted a more liberal rule than is applied by other courts in determining such questions. The decisions of this court would seem to follow the more liberal constructions.

We think the court below properly held that the provisions of the act in controversy were not violative of the provisions of the constitution regulating the distribution of the powers of state government.

[7] The court below, however, held certain provisions of the act violative of section 6 of article 6 of the constitution, which provides:

"The district courts in the several judicial districts of this state shall have original jurisdiction in all cases in equity; also, in all cases at law, which involve the title of the right of possession to, or the possession of real property. * * * They shall also have final appellate jurisdiction in cases arising in justices' courts, and such other inferior tribunals as may be established by law."

We think the court below was in error in so holding. The determinations made by the state engineer of the relative rights of water users upon a stream are not made in "cases in equity" or "cases at law," as those terms are used in the constitutional provision quoted, *supra.*

As said in *Farm Investment Co., supra:* "In an earlier part of this opinion we had occasion to allude to some of the particulars wherein the statutory proceeding differs from an ordinary suit in the courts. Affirmative relief in favor of one party as against another is not its object. Adversary pleadings, as they are commonly employed and understood, are not involved. Indeed, in the strict

sense, except in case of contest, it is doubtful if the various claimants can be regarded as adversaries."

In dealing with an analogous situation, involving an appeal to the district court from the action of the state engineer of Idaho, revoking a water permit, under the provisions of the Idaho statute, and a removal of the matter on appeal to the Circuit Court of the United States for the District of Idaho, Judge Dietrich, in denying a motion to remand, said: "The proceedings prescribed by the Idaho statutes to be taken before and by the state engineer are essentially nonjudicial in their character, and are purely administrative, and in no sense do they constitute a suit at law or in equity. * * * The state engineer's proceedings are *ex parte*, and are neither in form nor substance judicial in their nature. The legislature may have contemplated that in some, if not many, instances licensees would not resist cancelation of permits, and that the proceedings before and by the engineer would furnish a simple and inexpensive mode for formally and publicly declaring the termination of the licenses, and of clearing the public record of an apparent, though nonexistent, right. In case, however, the holder of the permit has not abandoned his right, and claims that the same is not forfeited, having notice of the action of the state engineer, he may institute a judicial inquiry. Other modes might have been provided for instituting the action, but the legislature in its wisdom saw fit to call the proceedings an 'appeal.' Whether the means and method prescribed are sufficient to enable the state court to acquire jurisdiction of the parties is not a question now under consideration. It simply need be said that the legislature intended and attempted to confer jurisdiction upon a judicial tribunal, and whether its intention in that regard has been rendered effectual is for the court in which such question is raised, be it state or federal, to determine." (*Waha-Lewiston L. & W. Co.* v. *Lewiston Sweetwater Irrigation Co., supra.*)

In *Re Silvies River,* 199 Fed. 501, Bean, District Judge,

speaking for the Circuit Court of the United States, District of Oregon, said:

"The phrase 'suits at common law and in equity' embraces not only ordinary actions and suits, but includes all the proceedings carried on in the ordinary law and equity tribunals, as distinguished from proceedings in military, admiralty, and ecclesiastical courts. It is a very comprehensive term, and is understood to apply to any proceedings in a court of justice by which an individual pursues a remedy which the law affords. Modes of proceeding may vary, but, as it affects the right of removal, any civil proceeding in a state tribunal in which a judgment or decree is sought as to the rights of the parties and presented by the pleadings for judicial determination is an action or suit within the meaning of the statute, regardless of the forum or tribunal before which the matter is pending. (*Weston* v. *City Council of Charleston*, 2 Pet. 449–464, 7 L. Ed. 481; *Gaines* v. *Fuentes*, 92 U. S. 10, 23 L. Ed. 524.) And the state cannot, by creating special proceedings or special tribunals, deprive the federal court of jurisdiction of such a suit or prevent a removal. (*In Re The Jarnecke Ditch*, 69 Fed. 161.) But a proceeding carried on by or before executive or administrative officers in the exercise of their proper functions cannot be regarded as a suit or action, although it may become such on appeal to a court having power to determine questions of law and fact, either with or without a jury, and where there are parties litigant to contest the case on one side or the other. (*Upshur Co.* v. *Rich*, 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196; *Waha-Lewiston L. & W. Co.* v. *Lewiston Sweetwater I. Co.*, 158 Fed. 137.)

"Now the preliminary proceedings before the state board of control, in taking testimony and making findings of fact concerning the rights of the various claimants to the waters of a given stream, are, in my judgment, not judicial, but rather administrative. The powers of the board are not brought into action by the filing of a paper in the nature of a complaint setting up asserted rights,

but by the mere presentation to it of a petition or request by one or more users of water, without any allegations of issuable facts, other than that the petitioner is a water user on the stream, and a request for the determination of the relative rights of the various claimants to such waters. No affirmative relief is asked, and no adverse pleadings are required or permitted, or issues joined, until after the evidence taken by the board is open to the inspection of the various claimants and owners. After the filing of the petition, the proceedings are to be conducted by the board and upon its initiative. Neither the petitioner nor the claimants obtain any redress for an injury as the result of such proceedings, but merely evidence of their title or right to the use of the water. It is true the board is vested with power to issue notice to the various claimants requiring them to present their claims, to take testimony and make findings of fact, but these findings must be confirmed by the court. The board has no power to make an adjudication of the rights of the claimants. Its duty is to ascertain the facts and present them to the court for its consideration. After the evidence and determination of the board has been filed with the court, the proceeding probably becomes a suit or action, but, until the board has completed its examination, made its determination, and filed its report, the proceedings are purely administrative.

"In so far as the board has jurisdiction over the adjudication of water rights, it is in effect a standing examiner, created by the state, charged with the duty, when requested by the users of water, of examining into and reporting to the court the facts on which the rights of the various claimants are based, so that such rights may be authoritatively settled and determined by a judicial tribunal. Until the report is made and filed with the court, there is no action or suit within the meaning of the removable statute."

The Oregon law under consideration by the federal court in the Silvies River case, *supra,* differs from the Nevada, Wyoming, and Nebraska laws in that, after the

board of control, under the Oregon statute, "has entered of record in its office an order determining and establishing the several rights to the waters of the stream," it is the duty of the board to transmit the original evidence and a certified copy of its determination to the clerk of the circuit court of the county in which said stream or some part thereof is situated, where the whole matter will be heard by the court, both as to the determinations made by the board where there has been no contest and where there has been a contest. It is provided, however, that: "Pending the consideration of the matter by the court, the findings of the board shall be in force and effect, unless stayed by the giving of a bond as provided in the act."

And further that: "During the time the hearing of the order of the board of control is pending in the circuit court, and until a certified copy of the judgment, order, or decree of the circuit court is transmitted to the board of control, the division of water from the stream involved in such appeal shall be made in accordance with the order of the board." *(Silvies River Case, supra,* 199 Fed. 499; *Wattles* v. *Baker County,* 59 Or. 255, 117 Pac. 417; Lord's Oregon Laws, secs. 6648, 6652.)

In practical effect, there is little difference between the Oregon statute and the Nevada, Wyoming, and Nebraska statutes. Both in Oregon and the other three states mentioned, the findings of the state engineer or water board are in force and effect until stayed or set aside by the court. The Oregon statute requires the court to adjudicate the relative rights of all water users, whether there is any dispute as to the determination of the water board or not, and this adjudication is initiated by the state itself. Under the laws of the latter states, parties contesting must initiate an adjudication by the courts, and only those cases go before the court where there is an actual controversy. In cases where the parties are satisfied with the determination made by the water officials, it may be possible that the subsequent adoption and approval of a court gives to such determinations a more

binding effect in the nature of a judicial decree, but, for the practical purposes of the administration of the flow of the stream by the state's administrative officers, there is no difference either as to those officers or to the water claimants.

It is unnecessary to consider other constitutional questions raised by counsel in these cases, for they are not essential to a determination of the cases before us. Courts as a rule will not determine such questions, except as is necessary to completely dispose of the cases as presented.

[8] In so far as the law authorizes the state engineer to investigate and determine the relative rights of water appropriators or users upon any stream or stream system, or requires statements to be made by the several claimants of their respective claims, and requires such claimants to support the same with proofs, and authorizes the state engineer to determine contests, or authorizes the state engineer or other executive officers to control the distribution of the waters of a stream to the persons found to be entitled thereto, the law is valid.

[9] It will be time enough to consider other questions when they shall arise in a specific case, such as whether the determinations made by the engineer have any force other than as being controlling for purposes of the administration of the law, until modified, suspended, or set aside by some order or decree of court, or whether the methods prescribed for appeal from the decisions of the state engineer in cases of contest are valid, and, if so, whether such appeals are "merely a continuation of those proceedings in an appellate tribunal," as held by the Wyoming court in *Willey, et al.,* v. *Decker, et al.,* 11 Wyo. 548, 73 Pac. 210, 100 Am. St. Rep. 939, or become in the nature of a case at law or in equity, as would seem to be the view of the Nebraska, Idaho, and federal courts, which have had occasion to consider the question. Nor need we now consider whether the ordinary rights of action are at all affected by the prescribed methods of appeal. Whether that portion of section 25, providing

that a failure to present a claim in time shall be given a later priority than those claimants who have filed in time, and other provisions not affecting the essential features of the general scheme of the act, will be determined only when a case arises making it necessary to determine such questions.

[10] It is contended that under the provisions of section 84, quoted *supra,* none of the other provisions of the act were intended to apply to water rights acquired prior to the adoption of the act; in other words, that the scheme of state control over the diversion of water to parties entitled thereto was to apply only to subsequent appropriations. We think the section is not subject to such construction. The section must be construed in connection with other provisions of the act. The whole scope and purpose of the act show that it was intended to apply to all water rights, whether acquired before or after its adoption. There would be little or no use in attempting state control over a stream or stream system unless all water rights were brought under that control. The greater portion of the water rights upon the streams of the state were acquired before any statute was passed prescribing a method of appropriation. Such rights have uniformly been recognized by the courts as being vested under the common law of the state. Nothing in the act shall be deemed to impair these vested rights; that is, they shall not be diminished in quantity or value. As they are all prior in time to water rights secured in accordance with later statutory provisions, such priorities must be recognized. As before stated in this opinion, while these rights exist and must be recognized and upheld, in the majority of cases, they are undefined. It is made the duty of the owners of such rights to present their claims and to support the same by proofs, in order that such rights may be determined for administrative purposes under the act. The act contemplates that the state engineer shall determine the same for such administrative purposes in accordance with the actual facts, and it is to be presumed, until the contrary is shown, that he

will so determine such rights. The act gives the state engineer no discretion to award an appropriator a less amount of water than the facts show he is entitled to, or to give him a later relative priority. True, as before stated, the state engineer may err in his determination, but, if so, the claimant has his remedy in the courts. Appropriations made in pursuance of the provisions of prior statutes are not to be "impaired or affected." Rights thus secured are supported by documentary evidence and are to be recognized accordingly. See Lord's Oregon Laws, sec. 6595.

[11] It is not an unlawful interference with the vested rights of water appropriators to so control those rights that each may have what belongs to him, but that he may not voluntarily, whether through a mistaken conception of his rights or not, interfere with the rights of others. (*Irrigation Co.* v. *Water S. & S. Co.*, 29 Colo. 474, 68 Pac. 781.)

A question has been raised as to whether the proceeding in prohibition (Case No. 2107) was an appropriate remedy, but, as that proceeding must be dismissed in any event, we will not consider that question. In case No. 2107 the proceeding is dismissed.

The district court is directed to modify the temporary injunction so as to only restrain the state engineer from making determinations which would in any way impair vested rights.

Opinion of TALBOT, C. J.:

I concur in the orders.

How far may the state engineer proceed under the act of 1913, creating the water law? To what extent are the provisions of that statute constitutional? The act purports to authorize this officer, by detailed procedure, to determine the relative rights of water users, and subject to rehearings and appeals to make his determinations conclusive and to empower him to administer and regulate the use of water in accordance with such determinations.

Section 87 of the water law provides: "Each section of this act and every part of each section is hereby declared to be independent sections, and parts of sections, and the holding of any section or part thereof to be void or ineffective for any cause shall not be deemed to affect any other section or any part thereof."

From this it appears that the legislature may have been in doubt as to the validity of certain parts of this statute.

[1] Under the decisions of this court, it has long been settled that, if a section or a part of a section is unconstitutional, this will not prevent the enforcement of the remainder of the act. If the legislature has attempted to confer upon the state engineer the power to determine water rights for the purposes of his regulation and control of the use of the water and of having a final adjudication of those rights, and if under the constitution the latter power can be executed only by the courts, or if it be conceded that he has no right to make a final adjudication of the relative water rights, there is no good reason why he may not be allowed to make the determination for administrative purposes.

[2] It is well settled that the state may inspect, regulate, and exercise a superintending control over various kinds of business and property. Statutes regulating the hours of labor in underground mines and in smelters, quartz mines, and ore-reduction plants have been sustained. Laws providing for factory inspectors and for safety appliances in mines and factories and on railroads, and regulating transportation of passengers, freight, and live stock, are no longer questioned. Statutes regarding headlights, safety couplers, and train crews are illustrations. Laws providing that payment for the mining of coal should be made upon the basis of weight after it has been screened have been sustained by the Supreme Court of the United States. Other statutes forbid the polluting of streams, running of water upon highways, and the speeding of automobiles. For administrative purposes, bank, railroad, and public service commissions may often act judicially and investigate,

have hearings, and determine facts to guide them for the purpose of fixing rates and exercising their control, but their determinations are not conclusive against the adjudications of the courts.

It has now come to be generally recognized that under our free government, with all its constitutional guaranties, statutes passed for the public benefit, to meet the new conditions which arise, will be sustained and enforced, although they affect private property or limit the right of contract.

[3] As in these arid regions water is most essential for the support of agriculture, one of the greatest industries of the commonwealth, and by reason of its nature the regulation of its use and the limitation of appropriators to the amount to which they are entitled and need for beneficial purposes is of prime importance, no good reason is apparent why the people's representatives in the legislature assembled may not in behalf of the public welfare pass laws to regulate its use, as is done in other intermountain states and with other property and business pursuits. To this end the state engineer may proceed in the manner directed by the statute to obtain the best evidence to be had, whether judgment, documentary, or oral, and to carefully and accurately determine the relative rights of water users. Any valid judgments previously rendered regarding these rights are binding upon him as well as upon the courts. Can his determinations have the force of final adjudications? It is provided by the constitution:

"ARTICLE 6—JUDICIAL DEPARTMENT

"SECTION 1. The judicial power of this state shall be vested in a supreme court, district courts, and in justices of the peace. The legislature may also establish courts, for municipal purposes only, in incorporated cities and towns."

Section 44 of the water law provides: "The final orders or decrees of the state engineer, in the proceedings provided by law for the adjudication and determination of

rights to the use of the waters in this state, shall be
conclusive as to all prior appropriations, and the rights of
all existing claimants upon the stream or other body of
water lawfully embraced in the adjudication, subject,
however, to the provisions of law for appeals, rehearings,
and for the reopening of the orders or decrees therein."

By this section it is attempted to make the determina-
tion of the state engineer a final adjudication, if there is
no rehearing or appeal, but it is not apparent that the
constitution will allow it to have that effect, for if such
determination could be a conclusive adjudication as the
statute states, even if there is no rehearing or appeal, it
would in effect be giving the force of a judgment to the
determination of the state engineer and have the effect
of conferring judicial power upon him, something the
constitution does not permit when it provides that the
judicial power of the state shall be vested in the supreme
court, district courts, and justices of the peace and courts
established for municipal purposes only. With the judi-
cial power of the state limited by the constitution to these
courts, the judges of which are required by the constitu-
tion to be elected, it would seem that the legislature
cannot invest the state engineer, or any appointive or
administrative officer, with the judicial power of finally
adjudicating vested rights to water. If the legislature
could give the state engineer power to make final adjudi-
cations of water rights, it could authorize him, or some
other appointive officer, to make final adjudications of
the right to mines, lands, and other property and claims,
and divest the courts of the jurisdiction given them by
the constitution, or, if appeal be nominally allowed to
the courts, hedge it about with such expensive and bur-
densome restrictions as to place it beyond the reach of
ordinary litigants.

As the constitution limits the judicial power in this
state to the supreme court, district, justice, city, and
municipal courts, it follows that it does not provide for an
appeal to the district court from the decision of any
tribunal not mentioned in that document. The fact that

the statute provides for an appeal cannot make the determination of the state engineer binding as a final adjudication of water rights or endow him with judicial power to make a final determination of rights, when the constitution directly limits that power to the courts specified. The constitution of the United States provides that: "The judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the Congress may from time to time ordain and establish." (Article 3, sec. 1.)

If there were a provision in the state constitution authorizing the legislature to establish other courts at its discretion, and provision had been made by statute for a special tribunal to determine the rights of water users, a very different question might be presented. Various provisions in relation to courts are found in the organic acts of different states. Upon the adoption of our state constitution, probate courts, which were permitted under the territorial government, were no longer allowed, and the jurisdiction they exercised was transferred to the district court. Decisions in Wyoming and other states having different constitutional and statutory specifications can have but little bearing upon this question.

It being concluded that the state engineer may take evidence and determine water rights for administrative purposes, and that his determinations are not binding as final adjudications, even if no appeal from them be taken, the further question arises as to whether, on the same theory that banks, railroads, and public service corporations are controlled, the state engineer, with the assistance of the duly appointed water commissioner, may allow, restrict, and regulate the use of the water claimed under vested rights without impairing them, in accordance with his determinations, subject to the right of any water user who may feel aggrieved thereby to apply to the courts to restrain the state engineer or the water commissioner from depriving the appropriator of any water to which he may be entitled. If the parties, or any

of them, desire to have this question determined, it may be suggested that counsel present their views regarding the same in a petition for a rehearing or answer thereto. The case is of unusual importance, and, if this question is to be determined, it should be given due consideration.

McCARRAN, J., concurring in the order in Case No. 2115; dissenting in Case No. 2107:

I concur in the order, as made applicable to case No. 2115, entitled *Anderson, et al.*, v. *Wm. M. Kearney,* in so far as its force extends, but, inasmuch as it only partially affirms the order of the lower court, I contend that it should go farther to the extent of a complete affirmance of that order. But it must not be understood that I concur in the opinion leading up to the order made.

The question of the constitutionality of the several sections of the water law of 1913 was, in my judgment, submitted to this court for its interpretation and decision.

Under the notices published by the engineer and served upon the several claimants, as set forth in case No. 2115, the engineer sought to proceed to the determination of relative rights, and therein he sought to conduct his proceedings under provisions of the several sections contained in the water law of 1913, and which were directly questioned in the lower court and directly questioned in this court, and I hold that it was our duty to meet those questions squarely and answer them, inasmuch as they were directly involved.

I dissent from the order dismissing the proceedings in case No. 2107, entitled *Ormsby County, et al.*, v. *Kearney.* An order, at least equal in effect to that made in case 2115, should have been made in case 2107.

An opinion, which follows, presents my reasons for dissenting from the order as made in case No. 2107 and my reasons for concurring in the order so far as made in case No. 2115, also my reasons for contending that the order made in the latter case should extend farther and be more comprehensive.

The appeal in case No. 2115 is from an order of the

district court of Humboldt County, refusing an order to vacate a temporary injunction granted by that court against appellant, as the state engineer of the State of Nevada. The respondents in this action, plaintiffs in the court below, assert the appropriation and application to a beneficial use of certain waters of the Humboldt River, between the years 1874 and 1902. It is also asserted by respondents in their complaint that they and their grantors have continuously, and ever since said water was first diverted from the Humboldt River, used the same for the purpose of irrigation of their lands lying along and adjacent to the Humboldt River, and that the waters have been used for the watering of stock and domestic purposes. They allege that the plaintiffs, and each of them, and their grantors, and each of them, appropriated a quantity of water so diverted and applied, and that the appropriation became, was, and is a vested property right.

On the 21st day of May, 1913, W. M. Kearney, as state engineer of the State of Nevada, caused to be served upon respondents, and also caused to be published in local newspapers, the following notices:

"State of Nevada.

"In the Office of the State Engineer.

"In the Matter of the Adjudication of the Relative Rights to the Waters of the Humboldt River and Its Tributaries.

"Order.

"It appearing to me, W. M. Kearney, state engineer of the State of Nevada, from an investigation made of the Humboldt River and its tributaries, one of the most important stream systems in the State of Nevada, that the relative rights to the use of water of the various claimants upon the said Humboldt River and its tributaries in the counties of Humboldt, Lander, Eureka, and Elko, State of Nevada, should be determined: Now, therefore, it is hereby ordered, that the Humboldt River and its tributaries, situated within the counties of Humboldt, Lander, Eureka, and Elko, State of Nevada, is hereby selected for the determination of relative rights to the

use of water of the various claimants thereon. It is further ordered, that the proceedings for the determination of the relative rights to the waters of the said Humboldt River and its tributaries, situate in Humboldt, Lander, Eureka, and Elko Counties, State of Nevada. shall begin on the 26th day of May, A. D. 1913. All claimants to rights in the waters of said stream system are required to make proof of their claims in the manner prescribed by law.

"Dated and entered at Carson City, State of Nevada, this 21st day of May, 1913.

" [Signed]   W. M. Kearney,

" [Seal.]                                   State Engineer."

"Notice of Order and Proceedings to Determine
Water Rights Before the State
Engineer of Nevada.

"In the Matter of the Determination of the Rela-
tive Rights to the Waters of the Hum-
boldt River and Its Tributaries.

"To whom it May Concern: You are hereby notified that the state engineer will begin the proceedings for the determination of the relative rights to the waters of the Humboldt river and its tributaries, situate in Humboldt, Lander, Eureka, and Elko Counties, State of Nevada, on the 26th day of May, A. D. 1913. All claimants to rights in the waters of said stream system are required to make proof of their claims in the manner prescribed by law.

"By order of the state engineer.

"W. M. Kearney, State Engineer.

"Dated at Carson City, Nevada, this the 21st day of May, A. D. 1913."

The notices heretofore set forth were given by the state engineer, pursuant to the act of the legislature of the State of Nevada, approved March 22, 1913.

It is the contention of respondents, plaintiffs in the court below, that sections 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 of

said act, and each of said sections, are unconstitutional: First, as being in violation of the fourteenth amendment to the constitution of the United States; second, as being in violation of article 1, sec. 8, of the constitution of the State of Nevada, and article 3, sec. 1, article 4, sec. 20, article 4, sec. 21, article 6, sec. 1, and article 6, sec. 6, of the constitution of the State of Nevada.

The act in question starts out by declaring that the water of all sources of water supply within the boundaries of the state, whether above or beneath the surface of the ground, belong to the public.

Section 2 is: "Subject to existing rights, all such water may be appropriated for beneficial use as provided in this act and not otherwise.

"Sec. 3. Beneficial use shall be the basis, the measure and the limit of the right to the use of water."

The act proceeds by providing for standards of measurement, creating the office of state engineer, maximum amount of water to be allowed, and prescribing the duties of the state engineer and his assistant.

Section 18 prescribes as follows: "Upon a petition to the state engineer, signed by one or more water users of any stream or stream system, requesting the determination of the relative rights of the various claimants to the waters thereof, it shall be the duty of the state engineer, if upon investigation he finds the facts and conditions justify it, to enter an order granting said petition and to make proper arrangements to proceed with such determination; *provided, however,* that it shall be the duty of the state engineer, in the absence of such a petition requesting a determination of relative rights, to enter an order for the determination of the relative rights to the use of water, of any stream selected by him; commencing on the streams in the order of their importance for irrigation. As soon as practicable, after said order is made and entered, it shall be the duty of the state engineer to proceed with such determination as hereinafter provided. A water user upon or from any stream or body of water shall be held and deemed to be

a water user upon the stream system of which said stream or body of water is a part or tributary."

Section 19 provides for the preparing of notices, setting forth that all claimants to rights in the waters of the stream system to be determined are required to make proof of their claims. The section further provides: "Which notice shall be published for a period of four consecutive weeks in one or more newspapers of general circulation within the boundaries of said stream system."

Section 20 provides for the making of investigation by the state engineer, such investigation to be with reference to ditches diverting waters and the lands irrigated therefrom.

Section 22 provides: "Upon the filing of such measurements, maps and determinations, the state engineer shall prepare a notice setting forth the date when the said state engineer is to commence the taking of said proofs, as to the rights in and to the waters of said stream system, and the date prior to which the same must be filed; *provided, however,* that the date set prior to which said proofs must be filed shall not be less than sixty days from the date set for the commencement of the taking of said proofs, which notice shall be deemed to be an order of the state engineer as to its contents, and which notice the state engineer shall cause to be published for a period of four consecutive weeks in one or more newspapers of general circulation within the boundaries of the said stream system, the date of the last publication of said notice to be not less than fifteen (15) days prior to the date fixed for the commencement of the taking of proofs by the said state engineer. At or near the time of the first publication of said notice it shall be the duty of the said state engineer to send by registered mail to each person, or deliver to each person, in person, hereinafter designated as claimant, claiming rights in or to the waters of said stream system, in so far as such claimants can be reasonably ascertained, a notice equivalent in terms to the said published notice setting forth the date when the said state engineer will commence the said taking of proofs, and

the date prior to which said proofs must be filed with the state engineer. Said notice must be mailed at least thirty (30) days prior to the date fixed for the commencement of the taking of said proofs."

Section 23 deals with the question of the state engineer mailing to claimants certain printed forms for proofs.

Section 24 provides for the making of such statements by the claimants under oath.

Section 25 is as follows: "It shall be the duty of the state engineer to commence the taking of proofs on the date fixed and named in the notice provided for herein for the commencement of the taking of proofs, and he shall proceed therewith during the period fixed by him and named in the said notice, after which no proofs can be received by or filed with the said state engineer; *provided, however*, that the state engineer may, for cause shown, in his discretion, extend the time in which proofs may be filed. Any person who shall fail to appear herein and make proof of his claim or rights in or to the waters of said stream system, as required by this act, prior to the expiration of the period fixed by said state engineer during which proofs may be filed, shall be deemed guilty of a misdemeanor, and if an individual person, shall upon conviction, be punished by a fine of not less than two hundred and fifty dollars ($250), and not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail for a term of not less than ten days and not exceeding six months, or by both such fine and imprisonment in the discretion of the court, and if a corporation, each and every officer and director thereof shall be amenable to said punishment hereinbefore in this section provided; *provided, however*, that the state engineer may, in his discretion, accept and use as a proof of claim any instrument purporting to be a record of a water right, recorded in the county or counties in which such stream system lies, and render a finding for a water right for the number of irrigated acres of land as found by his observation; *provided further*, that a finding rendered by the state engineer on a water claim, the holder of which is in

default, shall be given a later priority than the rights of claimants whose proofs were filed in accordance with the provisions of this act."

Section 26 provides for the intervention of interested parties.

Section 27 has to do with the fees to be paid by claimants to the state engineer.

Section 28 provides for the assembling of all proofs filed with the state engineer, and further provides that as soon as possible the state engineer shall prepare a notice fixing and setting the time and place when and where the evidence taken by or filed with him shall be open to the inspection of all interested persons; said period of inspection to be not less than ten days, which notice shall be deemed to be an order of the state engineer as to the matters contained therein.

Section 29 provides for the manner of instituting contests.

Section 30 has to do with the conduct of hearing the contests.

Section 31 empowers the state engineer to make rules governing contests.

Section 32 provides for the payment of fees by the contestants.

Section 33 is as follows: "As soon as practicable after the hearing of contests, it shall be the duty of the state engineer to make, and cause to be entered of record in his office, an order determining and establishing the several rights to the waters of said stream; *provided, however,* that within sixty days after the entry of an order establishing water rights, the state engineer may, for good cause shown, reopen the proceedings and grant a rehearing. Such order and determination shall be prepared, and, after certification by the state engineer, printed in the state printing office. A copy of said order and determination shall be sent by registered mail, or delivered in person to each person who has filed proof of claim, and to each person who has become interested through intervention or by having entered a contest

through having received a permit from the office of the state engineer, as herein provided. The determination of the state engineer shall be in full force and effect from and after the date of its entry in the records of the state engineer, unless and until its operation shall be stayed by a stay bond as provided for by this act.

Section 34 provides: "Any party, or any number of parties acting jointly, who may feel themselves aggrieved by the determination of the state engineer may have an appeal from the order of the state engineer to any district court of the State of Nevada in which any part of such stream system involved in such determination may be situated. All persons joining in the appeal shall be joined as appellants, and all persons having interests adverse to the parties appealing or either of them shall be joined as appellees; *provided, however,* that such appeal must be taken within six (6) months of the date on which said party or parties appealing have received a copy of the order of the state engineer determining said rights."

Section 35 provides: "The party or parties appealing shall, within six (6) months after the receipt of a copy of the order of the state engineer determining the rights to the use of water, file in the district court to which appeal is taken, a notice in writing stating that such party or parties appeal to such district court from the determination and order of the state engineer; and upon the filing of such notice, the appeal shall be deemed to have been taken; *provided, however,* that the party or parties appealing shall, within the six (6) months mentioned, enter into an undertaking, to be approved by the district court or judge thereof, and to be given to all the parties in the said suit or proceeding, other than the parties appealing, and to be in such an amount as the court or judge thereof shall fix, conditioned that the parties giving their said undertaking shall prosecute their appeal to effect and without unnecessary delay and will pay all costs and damages which the party to whom the undertaking is given, or either, or any of them, may sustain in consequence of such appeal."

Section 36 provides the manner in which notice is served upon the state engineer as to the pendency of the appeal.

Section 37 provides: "The appellant or appellants shall within sixty days after the appeal, as provided for, is perfected, file in the office of the clerk of the district court a certified transcript of the order of determination made by the state engineer, and which is appealed from, a certified copy of all records of the state engineer relating to such determination, and a certified copy of all evidence offered before the state engineer, including such measurements, maps, and determinations as herein provided to be made of record by the state engineer, together with the petition setting out the cause of the complaint of the party or parties appealing, to which petition all parties joined as appellees shall be served with notice by the issuance of a summons out of the office of the clerk of the district court, within the time and in the manner provided by law for the issuance and service of summons in actions of law."

Section 38 provides that the proceeding on appeal shall be conducted in the manner in which appeals are taken from the district court to the supreme court.

Section 39 provides the manner in which the judgment of the district court may be transmitted to the state engineer.

Section 40 provides that the costs on the appeal proceedings shall be paid by the losing party.

Section 41 provides for the manner of staying the order or decree appealed from, providing in that respect that an undertaking with good and sufficient sureties may be filed with the district judge in such amount as that officer may prescribe, conditioned that the appallent will pay all damages that may accrue to the appellee or appellees by reason of such order or decree not being enforced, should the proceedings and appeal be decided against the appellant.

Section 42 provides that hearings in these classes of cases shall have precedence over all civil causes.

Section 43 provides that the civil practice act of the State of Nevada shall govern in appeals from the decree of the district court for rehearings in the supreme court.

Section 44 provides: "The final orders or decrees of the state engineer, in the proceedings provided by law for the adjudication and determination of rights to the use of the waters in this state, shall be conclusive as to all prior appropriations, and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the adjudication, subject, however, to the provisions of law for appeals, rehearings and for the reopening of the orders or decrees therein."

Section 45 provides: "In any suit which may be brought in any district court in the state for the determination of a right or rights to the use of water of any stream, all persons who claim the right to use the waters of such stream and the stream system of which it is a part shall be made parties. When any such suit has been filed, the court shall by its order duly entered, direct the state engineer to furnish a complete hydrographic survey of such stream system, which survey shall be made as provided in section 20 of this act, in order to obtain all physical data necessary to the determination of the rights involved. The cost of such suit, including the costs on behalf of the state and of such surveys, shall be charged against each of the private parties thereto in proportion to the amount of water right allotted. In the case of any such suit now pending or hereafter commenced the same may at any time after its inception, in the discretion of the court, be transferred to the state engineer for determination as in this act provided."

Section 46 has to do with the appropriation of $5,000 to constitute a hydrographic fund.

Sections 47, 48, and 49 have to do with the definition of certain words used in the act.

Section 50 makes provision for the state engineer to formulate rules requiring claimants to furnish blue-prints of particular parcels of land.

Section 51 provides: "Upon the final determination of

the relative rights in and to the waters of any stream system, it shall be the duty of the state engineer to issue to each person represented in such determination a certificate to be signed by such state engineer, and bearing the seal of his office, setting forth the name and post-office address of the owner of the right, the date of priority, extent and purpose of such right; and if such water be for irrigation purposes, a description of the land, by legal subdivisions when possible, to which said water is appurtenant.   *   *   *"

Three primary questions are involved in the determination of the matter at bar:

First—By the water law of 1913 and its provisions, authorizing adjudication and determination, set forth from sections 18 to 51, inclusive, is the state engineer vested with powers in contravention to the provisions of the constitution of the United States and the constitution of the State of Nevada?

Second—By the act of 1913, is the state engineer empowered to adjudicate and determine the right of plaintiffs to the use of the waters appropriated, inasmuch as it is admitted in these proceedings, and for the purpose of these proceedings, that these rights became vested, prior to the creation of the office of state engineer, by the act of the water law of 1913?

Third—By section 84 of the water law of 1913 are legal appropriations of water, made and acquired prior to the operation of the water law of 1913 exempt from the operation of that act?

[1] The first of these questions, while perhaps the most important, although not necessarily the most significant, requires for its solution careful consideration of the prescriptions and provisions of the organic law of this state, keeping in mind the "due process" guaranty extended by the fourteenth amendment to the constitution of the United States.  Article 1, sec. 8, of the constitution of the State of Nevada, provides, *inter alia:* "Nor be deprived of life, liberty, or property, without due process of law."

As to the due process provision, this court has held in *Gibson* v. *Mason*, 5 Nev. 302: "Evidently nothing further was intended by it than to secure to the citizens the usual and ordinary means or course of judicial proceedings generally followed or observed in similar cases at the time it became a part of the fundamental law."

Further it is stated in that·case: "By 'due process of law,' as used in the constitution, is simply meant such general legal forms and course of proceedings as were known either to the common law or as were generally recognized in this country at the time of the adoption of the constitution."

See *Wright* v. *Cradlebaugh*, 3 Nev. 342; *State* v. *Millain*, 3 Nev. 466.

Due process of law not only requires that the party shall be brought into court, but that he shall have opportunity in court to establish any facts which, according to the usages of common law, or the provisions of the constitution, will be a protection to himself and property.

Article 3, sec. 1, of the constitution of the State of Nevada, provides that: "The powers of the government of the State of Nevada shall be divided into three separate departments, the legislative, the executive, and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

Article 6, sec. 1, of the constitution of Nevada, provides: "The judicial power of this state shall be vested in a supreme court, district courts, and in justices of the peace. The legislature may also establish courts, for municipal purposes only, in incorporated cities and towns."

Article 6, sec. 6, of the constitution of the State of Nevada, provides: "The district courts in the several judicial districts of this state shall have original jurisdiction in all cases in equity; also, in all cases at law which involve the title or the right of possession to, or the

possession of, real property, or mining claims, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand (exclusive of interest) or the value of the property in controversy exceeds three hundred dollars.   *   *   *   They shall also have final appellate jurisdiction in cases arising in justices' courts and such other inferior tribunals as may be established by law."

It may be well to observe here that the subject under consideration is one which deals with real property, in the strictest sense of the word.   (*Hough* v. *Porter*, 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 768.)

Mr. Kinney, in his work on Water Rights, 2d ed. vol. 2, sec. 768, says:

"The distinct, exclusive, usufructuary estate acquired by an appropriator to the use of water, by its lawful appropriation, is property of the highest order and oftentimes of the highest value.   The water right is protected by the law as such, and is subject to all the usual incidents of property.   This property right in water is as important, as valuable, and as extensive as the use to which it is applied.   The land is comparatively valueless without the water to irrigate it.   *   *   *   The property in a water consists, not alone in the amount of water claimed under an appropriation, but also in the priority of the appropriation.   And it very often happens that the chief value of an appropriation consists in its priority over other appropriations from the same stream.   Hence, to deprive one of his priority to appropriate would be to deprive him of a most valuable property right.   A perfected water right is a vested property right and its value capable of estimation in money, and one which the law protects.   A water right is such a property right that it comes clearly within the constitutional provisions that property shall not be taken or damaged for public or private use, except upon due process of law and upon just compensation."

The courts of many of the western states have announced a similar doctrine; in fact, it is one almost universally accepted.   (*Waha* v. *Lewiston*, 158 Fed. 137; *Mohl*

v. *Lamar Canal Co.*, 128 Fed. 776; *Town of Sterling* v. *Pawnee Co.*, 42 Colo. 421, 94 Pac. 339, 15 L. R. A. n.s. 238; *Fisher* v. *Bountiful City*, 21 Utah, 29, 59 Pac. 520; *Dalton* v. *Bowker*, 8 Nev. 190; *Nielson* v. *Parker*, 19 Idaho, 727, 115 Pac. 488.)

The power to determine relative rights sought to be conferred by this statute upon the state engineer has, in our judgment, been very properly termed a power to quiet title. (*Rickey Land Co.* v. *Miller & Lux*, 152 Fed. 11, 81 C. C. A. 207.)

[2] It is contended that the provisions of our water law of 1913 having been taken in substance at least from the statutes of Wyoming, and inasmuch as the Supreme Court of Wyoming has construed (*Farm Investment Co.* v. *Carpenter*, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918) that statute, the rule of statutory adoption should apply to the effect that, in the adoption of a statute from the State of Wyoming we are bound by the interpretation and construction of the court of last resort of the state from whence the statute was taken. The correct rule, in this respect, is, in our judgment, laid down in the case of *First National Bank of Butte* v. *Bell Co.*, 8 Mont. 46, 19 Pac. 403, in which it is said that when a particular statute has been adopted by a state from the statutes of another, after a judicial interpretation has been placed upon it by the parent state, the courts of the adopting state are bound by the interpretation or construction of the court of the parent state, unless the circumstances of the people of the adopting state are so different as to require the application of another rule. Moreover, it is fundamental and requires no citation of authorities that, where the organic law of the adopting state is totally different in some applicable particular from that of the parent state, the adopting state is not bound by the interpretation of the parent state. Furthermore, it must appear that the statutes are identical. (*Swofford* v. *Mills*, 86 Fed. 556; *Kirman* v. *Powning*, 25 Nev. 378, 60 Pac. 834, 61 Pac. 1090.)

It is further contended by appellant that the view of

the Wyoming court was adopted by the Supreme Court of Nebraska in construing a similar statute, and we are cited to the case of *Crawford* v. *Hathaway*, 67 Neb. 325, 93 N. W. 781, 60 L. R. A. 889, 108 Am. St. Rep. 647.

. In approaching the subject, it may be well to compare the organic law of Nevada with that of Wyoming in the first instance, and, secondly, with that of Nebraska, and in our comparison to consider the grants and inhibitions of jurisdiction of the established courts in the respective states.

At the outset we find our own constitution lacking in any provision bearing directly upon the subject of public waters, or appropriation, or use of the same, except in so far as we may have adopted the common law.

In the constitution of Wyoming a specific provision is found bearing at length upon the subject. Article 8 of the constitution of Wyoming is devoted entirely to the subject of irrigation and water rights, and, in order that my analysis may be more comprehensive, I quote it at length:

"Section 1. *Water Is State Property.* The water of all natural streams, springs, lakes, or other collections of still water, within the boundaries of the state, are hereby declared to be the property of the state.

"Sec. 2. *Board of Control.* There shall be constituted a board of control, to be composed of the state engineer and superintendents of the water divisons; which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state.

"Sec. 3. *Priority of Appropriation.* Priority of appropriation for beneficial uses shall give the better right. No appropriation shall be denied except when such denial is demanded by the public interests.

"Sec. 4. *Water Divisions.* The legislature shall by law divide the state into four (4) water divisions, and provide for the appointment of superintendents thereof.

"SEC. 5. *State Engineer*. There shall be a state engineer who shall be appointed by the governor of the state and confirmed by the senate; he shall hold his office for the term of six (6) years, or until his successor shall have been appointed and shall have qualified. He shall be president of the board of control, and shall have general supervision of the waters of the state and of the officers connected with its distribution. No person shall be appointed to this position who has not such theoretical knowledge and such practical experience and skill as shall fit him for the position."

The constitution of Nebraska is silent upon the subject of irrigation and water rights, but in this respect it may be well to observe that the doctrine of riparian rights has at all times consistently been held in force in that state. (*Crawford* v. *Hathaway, supra.*)

In the case of *Crawford* v. *Hathaway, supra,* it must be observed that while the Supreme Court of Nebraska cited approvingly the decision of the Supreme Court of Wyoming in the case of *Farmers' Investment Co.* v. *Carpenter, supra,* without a constitutional provision bearing upon the subject of irrigation or water rights, it premised the case largely upon the doctrine of riparian rights consistently maintained and applied in that state, and laid as a second premise the right of condemnation, declaring the same to be applicable as against riparian owners.

In our judgment, the constitution of the State of Wyoming, declaring, as it did, that all natural bodies of water are property of the state, and in giving to the board of control the power to supervise the waters of the state and the appropriation thereof, seems to have been adopted with the view of conferring ultimate powers of determination, whether they be termed judicial or *quasi*-judicial, on the board of control, and the statute of Wyoming, construed and interpreted in the case of *Farmers' Investment Co.* v. *Carpenter, supra,* was enacted pursuant to this special constitutional authorization.

In discussing the case of *Farmers' Investment Co.* v.

*Carpenter, supra,* Mr. Kinney, in his work on Irrigation, says: "From a careful study of the constitution of Wyoming, we are of the opinion that the court might have better rested its decision squarely upon the proposition that, under the state constitution, the board was vested with judicial power to try and decide the existing rights to water. The state constitution seems to have been adopted with this very end in view. It is true that section 1 of article 5 provides that: 'The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts, justices of the peace, courts of arbitration, and such other courts as the legislature may by general law establish for incorporated cities and towns.' But in the same instrument, by section 2 of article 8, upon the very subject under discussion, it is also provided: 'There shall be constituted a board of control, to be composed of the state engineer and superintendents of water divisions, which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution, and diversion, and of the various officers connected therewith, its decisions to be subject to review by the courts of the state.'" (Kinney on Irrigation, 2d ed. vol. 3, pp. 2885, 2886.)

Whatever may be said by way of argument as to the decision of the Wyoming court, in the case of *Farmers' Investment Co.* v. *Carpenter, supra,* and its application to the statute under consideration, this much is manifest at the outset: That, by specific declaration, the organic law of Wyoming laid the foundation for legislation upon the subject of water rights and contemplated a board of control with supervisory powers. Whether the Supreme Court of Wyoming, in its construction and interpretation of the Wyoming statute, rested its case upon the constitutional provision or not, it at least had the constitutional provision before it, expressly declaring the spirit and policy of the founders of the government of that state applicable to public waters.

But the constitution of Nevada, in my judgment, will not

permit of any arbitrary method, such as that prescribed by the sections of the statute under consideration, for the adjudication of property rights.

The framers of our constitution, having in mind the all-important question of the protection of life and the security to the individual of the enjoyment of property, after guaranteeing these things, prescribed the avenues by which either might be taken from the individual, and in that respect they conferred upon the district courts in the several judicial districts of the state original jurisdiction in all cases in equity, and also conferred upon those courts original jurisdiction in all cases at law, which involved the title or the right of possession to or possession of real property. The founders of the organic law also prescribed the only avenues by which the district court should have appellate jurisdiction. In that respect article 6, sec. 6, prescribes that they shall also have final appellate jurisdiction in cases arising in justices' courts and such other inferior tribunals as may be established by law. And the affirmative words in a constitution that courts shall have the jurisdiction stated naturally include a negative that they shall have no other. (*Lake* v. *Lake,* 17 Nev. 238, 30 Pac. 878.)

When jurisdiction is affirmatively conferred upon a given court, it is to be deemed exclusive, unless by constitutional provisions an exception is made, or the power is conferred upon the legislature to extend jurisdiction in certain cases. Original jurisdiction affirmatively conferred upon a given court in civil actions, without a stated exception, and without power expressly given to the legislature to either limit or increase this jurisdiction, the jurisdiction thus conferred is exclusive. (*State* v. *Rising,* 10 Nev. 97.)

Section 33 of the act of 1913 empowers the engineer to make and cause to be entered of record in the office an order determining and establishing the several rights to the waters of a given stream.

Reading sections 18, 25, and 33 in conjunction with section 44, the act makes conclusive the orders of the

state engineer made pursuant to his determination as to all prior appropriations and the rights of all existing claimants upon streams or other bodies of water lawfully embraced in the adjudication.

What is involved in the determination of the state engineer? The right to the use of water for beneficial purposes. Upon what does this right depend? Prior appropriation and beneficial application. Are these questions of law as well as of fact? Manifestly they are. Are they questions which may involve the law and the adjudication and decrees of courts? These questions must all be answered in the affirmative.

It is claimed that these sections, and the policy of the law generally, merely confers upon the state engineer ministerial powers, and that even though the powers of the state engineer, as sought to be conferred, are *quasi*-judicial, the claimant is not deprived of due process of law, inasmuch as the statute prescribes that he may appeal to the district court. These contentions, in my judgment, are untenable, under a strict reading of the statute. By section 44 it is provided that the determination of the state engineer shall be conclusive as to all existing claimants upon the stream. Section 55 emphasizes the conclusiveness of the state engineer's determination, and the constitution precludes appeal.

It is suggested that the provisions of these sections are only to confer upon the state engineer ministerial powers in order to carry out a scheme of water supervision and regulation. But how can this be seriously contended for, when by section 44 the final determination of the state engineer is termed "a decree," and the proceeding is termed "an adjudication and determination," and the decree of the state engineer is by that section made conclusive as to the existing rights of the claimants upon the stream? Conclusive decrees made by a ministerial officer upon a matter involving the title and the right of possession to property—that subject with reference to which the fundamental law of this state declares "the district courts of the several judicial districts of the state

shall have original jurisdiction." But it is contended that, inasmuch as the right of appeal to the district court is prescribed for any person deeming himself aggrieved by these final decrees of the state engineer, the courts, by the act of 1913, have not been ousted of that which the constitution declares is for them alone to determine. But the answer to this is that the only appellate jurisdiction given by the constitution to the district court is that which is prescribed specifically by section 6, art. 6, in which it is declared: "They shall have final appellate jurisdiction in cases arising in justices' courts and such other inferior tribunals as may be established by law."

It is unnecessary for me to say, I apprehend, that the state engineer is not "an inferior tribunal," as contemplated by the provision of the constitution. (*Meagher* v. *County of Storey*, 5 Nev. 249.) This being disposed of, the only appellate jurisdiction which the district court is possessed of is in cases arising in justices' courts.

This last observation makes the provisions of the water law of 1913 even more drastic than its words imply, for it confers upon a ministerial officer powers of final determination on matters involving the right of the possession to property, and fixes the only avenue of redress for a party aggrieved to a court, which, by constitutional prescription, is precluded from assuming appellate jurisdiction. This provision of the water act of 1913 is a nullity. A law which is in conflict with the fundamental law of the state is not a law at all. (*Meagher* v. *Storey Co.*, 5 Nev. 249; *Lake* v. *Lake*, 17 Nev. 230, 30 Pac. 878.) Furthermore, the only appellate jurisdiction which the district court takes under the constitution is a final appellate jurisdiction, one from which there is no appeal to the highest court of the state. (*Floyd and Gutherie* v. *Sixth Judicial District Court*, 36 Nev. 349; *Bancroft* v. *Pike*, 33 Nev. 80, 110 Pac. 1; *State* v. *Rising*, 10 Nev. 101; *Leonard* v. *Peacock*, 8 Nev. 157.)

Hence it follows that unless we read into section 6 of article 6 of our constitution a different appellate jurisdiction for the district court from that which the constitution

prescribes, and which has been settled by the various decisions of the court, the appeal that might be taken by an aggrieved party from the final order or decree of the state engineer, even were such an appeal contemplated by the constitution, would be terminated by a decree of the district court, and this court would be prescribed from hearing or determining the controversy.

I have already mentioned that the water law of 1913 is dissimilar to the Wyoming act, construed in the case of *Farmers' Investment Co.* v. *Carpenter, supra,* and it may be well to observe here that, while those portions of the water act of 1913 adopted from the Wyoming statute might be applicable under the constitutional provisions of Wyoming, they are inapplicable under the constitutional provisions of this state. This is especially true when we consider the constitutional conference of jurisdiction extended to the several courts in the respective states. The constitutional authorization of appellate jurisdiction of the district court in the States of Wyoming and Nebraska differs most materially from that conferred upon the district court in this state.

Article 5, sec. 10, of the constitution of Wyoming, provides: "They shall have such appellate jurisdiction in cases arising in justices' courts and other inferior courts in their respective counties as may be prescribed by law."

Article 6, sec. 17, of the constitution of Nebraska, provides: "Appeals to the district court from the judgments of county courts shall be allowed in all criminal cases, on application of the defendant; and in all civil cases, on application of either party, and in such other cases as may be provided by law."

Article 6, sec. 6, of the constitution of Nevada, in this respect, provides: "They shall also have final appellate jurisdiction in cases arising in justices' courts and such other inferior tribunals as may be established by law."

The constitutional provisions of the States of Wyoming and Nebraska, conferring appellate jurisdiction upon the district courts and county courts, do not make that jurisdiction final, and I am unable to find an expression of the

courts of last resort of the states mentioned in which the appellate jurisdiction of the county court or the district court has been declared to be final. On the contrary, the Supreme Court of Wyoming, in passing upon this very subject, said: "An appeal to the district court from a decision of the board is merely a continuation of those proceedings in an appellate tribunal." (*Willey* v. *Decker*, 11 Wyo. 548, 73 Pac. 210, 100 Am. St. Rep. 939.)

As has already been stated, the constitution limits the appellate jurisdiction of the district court to those cases appealed from justices' courts and such other inferior tribunals as may be established by law, and hence it follows that unless we read into this provision of the constitution either that the state engineer is an inferior tribunal, established by the water law of 1913, or that the district court will take appellate jurisdiction in cases other than those conferred upon it by the organic law, it necessarily follows that the provision of the water law of 1913, as to appeals from the orders and determinative decrees of the state engineer, are unconstitutional, and the district court would be without power to assume such jurisdiction. If we view the contemplated final orders or decrees of the state engineer and his determinations in the light of these conclusions, it unanswerably follows that, there being no appeal from the determinations of the state engineer, they are therefore final determinations, and these final determinations are in matters in which the right of possession to property is involved, and the party aggrieved is cut off from access to the civil courts, and the constitutional guaranty is nullified. My reasoning, in this respect, might not be applicable under the laws and constitution of Wyoming or Nebraska, inasmuch as different provisions are there made as to the original and appellate jurisdiction of the several courts from that which is found in our organic law.

It has been asserted that the hearing and proceeding before the state engineer is neither a matter at law nor in equity. Assuming, for the time, the correctness of this assertion, the property subject to determination and

the property rights subject to the adjudication of the
state engineer, in the contemplation of the water act of
1913, are matters which, by our constitutional provisions,
can only be determined by tribunals having jurisdiction
in law and equity, as contemplated in that organic act.
Moreover, the question is not as to whether the power
exercised by the state engineer, under the provisions of
the water act of 1913, is judicial.   The question is: Is
the matter involved (*i. e.*, the possession or right of pos-
session to property) one which can only be determined
by the exercise of judicial functions?   In other words,
is the ultimate fact to be determined, the right to be
granted or denied, one which can only be granted or
denied by the judicial branch of the government?

Water being a property right, and its enjoyment
arising primarily on appropriation and priority, each
of these elements is essential to the right under the
doctrine of first in time first in right.   Yet, if we give
to section 25 of the water law of 1913 the full meaning
of the words there used, it is within the power of the
state engineer, moreover, it is made mandatory, that the
state engineer shall render a finding in case of the claim-
ant who defaults in making proof that the claimant,
regardless of his actual priority, shall be given a later
priority than that of others whose proofs were filed in
accordance with the provisions of the act.

The very acme of severity, if not absurdity, is reached
by section 25, wherein it is prescribed that any person
who shall fail to appear and make proof of his claim or
right in and to the waters of a stream system, as required
by this act, prior to the expiration of the period fixed by
the state engineer during which proof may be filed, shall
be deemed guilty of a misdemeanor and, if an individual
person, shall be punished by a fine of not less than $250
and not exceeding $1,000 or by imprisonment in the
county jail for a term of not exceeding six months, or by
both such fine and imprisonment, in the discretion of the
court.   Section 25, as it stands, reads that a defaulting
claimant shall be divested of his property rights, and,

moreover, he shall be subjected to the indignity of fine or imprisonment for having given up that right. It has been said by a learned text-writer on the subject of water rights in western states that the laws of Wyoming were adopted in part from the laws of Italy and India. This provision, although not found in the statutes of Wyoming, may have been taken from the laws of India, but we find no sanction for such provision in a government such as ours.

Mention of section 25 is unnecessary in the matter at bar, except in so far as it goes to refute the assertion that the acts of the engineer are only ministerial. Section 25 carries out the spirit of the law which is to make final the decrees rendered by the engineer. This is absent in the laws of the other states.

Mr. Kinney, in his work on Irrigation and Water Rights, in discussing the subject of state control, under a system similar to the Wyoming law, says: "It was evidently the intent to give him (the state engineer) or board of control, over which he presides, the exclusive jurisdiction in the determination of existing water rights within the state, and the power to enforce his or its decisions, in the distribution of the water. In other words, as far as this phase of the subject is concerned, it was to be a government by engineers. But the constitutional convention and the legislature, departing from the original conception of the framer of the bill, gave the right of appeal to the courts. And, further, the supreme court of the state, by its decisions in construing the law after its enactment, has also modified what was undoubtedly the intent of the framer of the bill by holding that an appropriator who had not even presented his claim to the board of control, even after notice of the proceedings, was not estopped from afterward asserting his rights in the district court, and further by holding that a water right cannot be made an inseparable appurtenance to a certain tract of land, as was attempted by the act, but which feature was held to be unconstitutional, and that, too, even after the 'views' of the engineer in question

and the framer of the bill had been presented to the court. It is true that such an arbitrary method as designed might prevent litigation. But it is also true that, if the citizens of this country cannot settle their disputes peaceably, they should be given the right to resort to the courts for their adjudication as to their respective rights." (Kinney on Water Rights, 2d ed. vol. 3, p. 2901.)

In the case of *Thorp* v. *Woolman,* 1 Mont. 168, the Supreme Court of Montana, in passing upon the constitutionality of an act providing for the appointment of three commissioners empowered by the act of the legislature to apportion in a just and equitable proportion the waters of certain streams, without dwelling upon the subject at length, said: "The powers given this commission by the act under which they conducted their proceedings are clearly judicial. They are empowered by it to apportion the waters in a just and equitable proportion. This required them to determine what was just and equitable between these parties. In the next place, the apportionment was to be made with a due regard to the legal rights of all. This required of them to determine what these legal rights were. The organic act of this territory, which is its fundamental law, limits the powers of legislation, vests judicial power in a supreme court, district courts, probate courts, and in justices of the peace. No tribunal which does not belong to one of these classes is legal. As this commission cannot claim to belong to either one of these, it was a tribunal exercising judicial authority without legal warrant, and its acts are void."

The decision in the case of *Thorp* v. *Woolman,* in this respect, was reannunciated by the same court in the case of *Thorp* v. *Freed,* 1 Mont. 656.

In view of my analysis heretofore set forth, it is unnecessary for us to dwell on the hardshipful and expensive means, set forth in the water law of 1913, by which appeals may be perfected. It is not a question as to whether or not the respondents in this case are

financially able to comply with the requisites of the law as they are set forth. The policy of this state, from its earliest day until the present time, has been to invite the home builder, and in most instances the people who have heretofore settled in our valleys and builded homes and tilled our soil have been people of limited means, unable to afford the money necessary to meet the requisite expenses demanded of them in an act of this character to protect their rights, so that, even if the right of appeal was afforded and not prohibited by the constitution, the expensive method provided by the act for perfecting an appeal from an order and decree of the state engineer would become prohibitive.

It may be contended that we are not called upon to construe or interpret many of the sections herein referred to, but this contention is untenable, inasmuch as sections 18 to 51, taken as a whole, constitute a proposed scheme for investigation, determination, and adjudication on the part of the state engineer, and the entire plan whereby the state engineer's determination is to become final, and the entire arrangement whereby the courts are ousted of jurisdiction, is to be found within those sections of the act.

It will not do to say that the claimant may relieve himself of the action of the engineer by an action in court, by the ordinary proceeding, independent of the provisions of the act. This would be to declare that hardshipful litigation is to be promoted by this act. It would in effect say that the action of the engineer, however arbitrary and unjust, must stand against a claimant's property, unless by good fortune he be possessed of the means to carry on litigation.

The notice of the engineer in this case declares that he will determine relative rights of the water claimants on the Humboldt River system within the several counties named. The scope of the term "relative rights" may at first thought fail to receive due appreciation. It is not a question of the engineer determining the appropriations and priorities for his own guidance and supervision, or

for ministerial purposes. The matter embraced within the term "relative rights" means the right of every claimant on the Humboldt River system in relation to every other claimant. It means that every appropriator of water becomes a contestant for his priority and for his appropriation against every other claimant, and the engineer, by his notice, assumes to investigate, adjudicate, and finally determine, not only for ministerial purposes, not only for purposes of supervision, but for purposes of final adjudication, the legality of every appropriation from a standpoint of application to beneficial use and priority, and from his determination, as we have already disclosed, the constitution of this state precludes the possibility of appeal to the courts, in so far as the provisions of this act, under which the engineer seeks to operate, is concerned.

The question of relative rights, as between water claimants on a stream system, is a matter between the several claimants, one to be determined by the courts, and one with which the engineer has no concern.

"These executives," says the Supreme Court of Colorado, "may, and indeed should, prevent waste and insist upon economical use; but, where there is a real and *bona fide* dispute as to the relative rights to the use of water * * * between several claimants, these officers are not called upon to inject themselves into the controversy and decide between them." (*Boulder & Left-Hand Ditch Co.* v. *Hoover,* 48 Colo. 343, 110 Pac. 77.)

It follows that the acts of the engineer, even if intended to be ministerial, become final because of constitutional provisions as to the jurisdiction of courts prohibiting review by the process suggested by the act.

May I suggest the query: What difference is there between a decree rendered by a court, as to the right to enjoy property, and a decree rendered by a ministerial officer, as to the right to enjoy property, if either or both are final? The former is by that department of the government invested by the organic law with powers to decree on that subject; the latter is, by a ministerial

officer, expressly divested by the organic law of such powers. It makes no difference whether we term the act of adjudication, under this statute, "ministerial" or "judicial"; the distinction is in the word, not in its significance. By reason of the peculiarity of our constitution, the avenue suggested by the statute as one of redress affords no relief, because the courts cannot take jurisdiction by the way suggested. Hence the acts of the engineer become final. The courts are ousted of jurisdiction. The fact that other laws may give the courts power to act in redress of wrongs committed under this act will not relieve this one of its unconstitutional features.

"The test of its unconstitutionality is whether it operates to deprive any person of a right guaranteed or given him by the constitution. If it does, it is a nullity, whatever may be its form." (*Davies* v. *McKeeby,* 5 Nev. 372.)

Being final, they effect the subjects of which the courts have exclusive original jurisdiction. Hence, the provisions of the act in this respect are contrary to the constitution. The conclusions reached by the courts of Wyoming and Nebraska are not binding on this court, first, because the act in question is different in its provisions from the water act of Wyoming, construed in the case of *Farmers' Investment Co.* v. *Carpenter;* second, in the case of *Farmers' Investment Co.* v. *Carpenter,* the Supreme Court of Wyoming had before it, whether it rested its case upon it or not, specific provisions in the constitution of Wyoming providing *ab initio* for the enactment of such a law as that found in the statutes of Wyoming; third, the constitution of Wyoming, applicable to its judicial department, does not limit the appellate jurisdiction of the district court as does the constitution of Nevada. Moreover, it does not make final the judgment of the district court on matters of which it takes appellate jurisdiction.

[3] The second and third questions may be properly determined together.

It is admitted in this action that all of the plaintiffs

were appropriators of water from the Humboldt River system prior to the enactment of the water law of 1913, and, in dealing with this question, the history of our water legislation in this state may have some bearing. It was not until 1903 that the legislature of this state sought to enact a comprehensive water law, and therein sought to create the office of state engineer.

The act of 1903 (Stats. 1903, c. 4) followed closely the enactment of the national irrigation act, sometimes known as "the Newlands Act," and it was at the instance and suggestion of the author of that bill that the legislature of 1903 passed the enactment.

The act of 1903 was superseded by the act of 1905 (Stats. 1905, c. 46), and both of these statutes were made applicable only to future and not past appropriations.

The act of 1905 was superseded by the act of 1907 (Stats. 1907, c. 18), in which act we find the provision: "All existing rights to the use of water, whether acquired by appropriation, or otherwise, shall be respected and reserved, and nothing in this act shall be construed as enlarging, abridging, or restricting such rights."

The act of 1907 by its terms applied specifically to unappropriated waters. The act of 1907 was superseded by the act of March 22, 1913. Section 2 of the act of 1913 provides: "Subject to existing rights, all such water may be appropriated for beneficial use as provided in this act and not otherwise."

Section 84 of the act of 1913 is as follows: "Nothing in this act contained shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this act where appropriations have been initiated in accordance with law prior to the approval of this act.   *   *   * "

The original law of this state applicable to the use of water in the natural streams of the state was governed by the doctrine of riparian ownership, as known at common law, and many appropriations were made and

rights acquired under this doctrine, and it was not until the doctrine of prior appropriation was initiated by this court, as being applicable to the conditions existing in this state, that the riparian doctrine was abdicated. (*Vansickle* v. *Haines,* 7 Nev. 249.)

The various legislative acts applicable to the subject of public waters and the appropriation thereof clearly disclose that it was the intent of the legislature in each instance to recognize existing rights, and the same intention and spirit are manifest in the act of 1913.

It might be said that under a system of water control, such as that contemplated by the acts of the various states in the arid region, and in fact under the act of 1913 of this state, the engineer might determine, for his own administrative purposes, and for the purpose of admitting future appropriations, the exact extent of each appropriator's right, but this is not the object nor the scope of the proposed action of the state engineer as declared by his notices, upon which the complaint in this case was founded, because by these notices he assumes the province of declaring relative rights, and draws each claimant into open contest with every other claimant on the river system upon the two important subjects; *i. e.,* amount of appropriation and priority. And acting under the statute of 1913 and under his notices, given pursuant thereto, he seeks to make final orders and decrees as to their respective relative rights, and thereby he declares his intention to make such orders and decrees as will necessarily impair and affect, to the extent of his determination and judgment, at least the vested rights of persons whose appropriations have been initiated in accordance with the customs or laws of this state prior to the act of 1913.

By section 84 of the water law of 1913, the legislature, in my judgment, merely sought to carry out that same declaration and purpose and intention which had been a feature in former legislative acts upon the same subject; *i. e.,* to recognize appropriations made under former laws or legislative acts, and to keep those appropriations free

from being affected or impaired by anything contained in the water law of 1913.

The determination of individual rights upon a river system must not be confused with the determination of relative rights. The determination of relative rights in this instance is one affecting the rights of one individual as against another or a number of others, while the determination of individual rights is one which does not correlate the comparative rights of any other person. The latter might properly be said to be essential under a system of state control in order that the controlling power might supervise and determine the availability of future appropriations, but the former has no place in the contemplation of such a system, but belongs primarily to the courts. (Weil on Water Rights in Western States, vol. 2, p. 1103, and authorities there cited.)

The act of Congress of July 26, 1866, enacted for the purpose of dealing with the rights of miners who had theretofore, without objection, mined in the public lands, provided: "That wherever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purpose aforesaid is hereby acknowledged and confirmed." (Act July 26, 1866, c. 262, sec. 9, 14 Stat. 253.)

In construing this act, the Supreme Court of the United States, speaking through Mr. Justice Miller, said: "We are of the opinion that the section of the act which we have quoted was rather a voluntary recognition of a preexisting right of possession, constituting a valid claim to its continued use, than the establishment of a new one." (*Broder* v. *Water Co.,* 101 U. S. 276, 25 L. Ed. 790; *Platte Water Co.* v. *Northern Colo. Irr. Co.,* 12 Colo. 533, 21 Pac. 711.)

The reasoning, as set forth in the case of *Broder* v. *Water Co.*, *supra*, is, in my judgment, applicable to section 84 of the water act of 1913. Statutes of this character are not to be viewed as retroactive, even if there were no declaration conveying a contrary idea. More especially is this true in view of an express declaration, such as set forth in section 84. (*Palmer* v. *Railroad Comm.*, 138 Pac. 997.) It has been urged that this is progressive legislation, instituted for the purpose of state control of public waters, and that the system of adjudication and determination authorized by sections 18 to 51, inclusive, are essential to the carrying out of this policy. But it must be observed that a similar policy is sought to be carried out in the States of Oregon, Colorado, and Utah and Washington, and in each of these states the jurisdiction, for primary adjudication, is vested in the court of prescribed power. (Compiled Laws of Utah, 1907, sec. 1271; Lord's Oregon Laws, vol. 3, sec. 6650; Mills, Ann. Statutes Colo. 1912, vol. 1, sec. 3801.)

While many of the provisions of the water law of 1913 may have been adopted from the statutes of Wyoming, it is manifest that many of the provisions were taken from and are more nearly like the statutes of Oregon, but in the latter state the court is looked to for adjudication.

The legislative plan of most of the western states for the regulation of the use of water, vesting adjudication in their courts, has been brought about by reason of their constitutional provisions and the holding of their courts to the effect that any adjudication of priorities within the meaning of the irrigation acts are judicial determinations. (Kinney on Irrigation, vol. 3, 2d ed. p. 1586; *Sterling Irr. Co.* v. *Downer*, 19 Colo. 595, 36 Pac. 687; *Thorp* v. *Woolman*, 1 Mont. 168.) Holding to the same effect upon analogous subjects are *People* v. *Dunn*, 157 N. Y. 528, 52 N. E. 572, 43 L. R. A. 247; *In Re Dumford*, 7 Kan. App. 89, 53 Pac. 92; *State* v. *Blaisdell*, 22 N. D. 86, 132 N.W. 769, Ann. Cas. 1913E, 1089; *Bridge Co.* v. *Hogadone*, 150 Mich. 638, 114 N. W. 917.

Under the codes of the states heretofore referred to, the uniform laws of procedure are resorted to, and judgments and decrees are entered after the claimant has been afforded opportunity to avail himself of all that due process of law guarantees. He may meet the witnesses against him and cross-examine, a privilege most salient in all matters where either liberty or property is in course of determination; and he may offer his proofs in support of his own contentions in an orderly manner, and the judgment and decree entered thereon may be reviewed by the highest court of the state. All this is denied under the water law of 1913, by reason of our constitutional provisions as to original jurisdiction and appellate jurisdiction of the several courts. Mr. Kinney, in his work on Irrigation, in speaking upon this phase of the subject says:

"The more we study the workings of the laws of the state control as to the determination by governing boards in the first instance, of existing rights to the use of water, the more firmly we are convinced that all judicial or 'quasi-judicial' powers should be taken from the state engineer and governing boards, and vested in the courts, as is the case in Colorado, where, under our form of government, that power properly belongs. And, fortunately, this is the rule in the most of the states which have recently adopted these laws. It is true that in Wyoming and Nebraska any party feeling himself aggrieved by the decision of the state engineer or governing board may appeal from such decision to the district court, but the first trial is before the board. And, furthermore, when an appeal is taken, it takes a double amount of time and expense upon the part of the contestants in attending the trials and getting their evidence properly before the board and court. Why is it not better for all parties concerned, in the first instance, to bring the action in court and to have the matter properly adjudicated and finally settled by a proper decree? If not satisfied with the decree and judgment of the trial court, a party may then

appeal to the supreme court of the state." (Kinney on Irrigation, 2d ed. vol. 3, p. 2902.)

The contention that the construction placed upon the Nebraska statute by the supreme court of that state in the case of *Crawford* v. *Hathaway, supra,* should be binding on this court is untenable, inasmuch as the Nebraska law was more nearly an exact copy of the Wyoming law than is our water law of 1913. The provisions of our statute, as they appear in sections 18 to 51, inclusive, are tantamount to the provisions of the Oregon law (sections 6635 to 6648), with the exception of section 25 of our statute.

The Nebraska court in the case of *Crawford* v. *Hathaway, supra,* based its conclusions upon the following assertion:

"The Wyoming statute, from which ours is borrowed, has been subjected to judicial construction, and is upheld by the supreme court of that state on the express ground that the powers authorized therein are not judicial but administrative. (*Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918.) With this authoritative construction of the statute, and a decision of the very question raised in the case at bar, upon reasoning quite convincing and satisfactory, it would seem that the question should be regarded as at rest." (*Crawford* v. *Hathaway,* 67 Neb. 365, 93 N. W. 795, 60 L. R. A. 889, 108 Am. St. Rep. 647.)

In discussing the Wyoming and Nebraska decisions, *supra,* Mr. Weil, in his work on Water Rights in Western States, says: "These decisions are not consistent or clear among themselves; they are inconsistent with the weight of authority, * * * and are unsound upon principles, * * * as is shown by the general adoption in most states of a system of adjudicating rights by special proceedings in court and not by administrative officers." (Weil, Water Rights in Western States, vol. 2, 1108, 1109.)

Speaking finally, the vital question in this case, regardless of what phase it may assume, is not as to whether the

acts of the engineer were "ministerial" or "judicial." The question rather is, Does the law attempt to confer upon an officer, outside of the judicial branch of the government, powers to interfere in matters involving the possession of or right of possession to real property? If it does, it violates the spirit and intent, as well as the specific provision of our constitution, wherein these powers are exclusively vested in the courts. The constitution is the creation of the people, and the legislature is the creation of the constitution. It follows that the people, speaking through their constitution, are superior to the legislature, and that the enforcement of. the constitutional limitations upon legislation is the execution of the people's will, and not the execution of judicial edicts. Courts neither make laws nor constitutions, but should remain indifferent between them. Constitutions are for the protection of all and each for all time and not for now and then. They deal with principles which are paramount in their nature, and which derive their virtue from their stability. No such provisions as those found in the statute under consideration were contemplated by the framers of our constitution. No foundation was there laid for the enactment of any such legislation. Hence, when such statutes are enacted, they must by some means or another bring themselves into conformity with the provisions of the constitution, or, at least, they must not be in conflict with some specific constitutional inhibition.

It is my conclusion, from the anaysis heretofore set forth, that the provision of the act in question seeks to confer judicial powers upon a nonjudicial officer. Moreover, it seeks to take from the courts that which the organic law specified should be limited to the province of the courts—the right to determine matters involving the possession or the right of possession to property. Moreover, the act cannot be viewed as retroactive, and the specific provisions of section 84 speak for the legislative intent in that respect.

The order of the lower court in refusing to dissolve the injunction should have been affirmed.